STATE of Wisconsin, Plaintiff-Respondent,

v.

Carol Ann LAMPE, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 82–892–CR, 82–893–CR. Argued December 1, 1983.— Decided June 20, 1984.*

(Also reported in 349 N.W.2d 677.)

For the defendant-appellant-petitioner there were briefs by *Raymond G. Meyer* and *Koenen & Meyer,* Port Washington, and oral argument by *Raymond G. Meyer.*

For the plaintiff-respondent the cause was argued by *Jeffrey M. Gabrysiak,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, C.J.   This is a review of an unpublished decision of the court of appeals dated February 16, 1983, which affirmed the judgment of the circuit court for Sheboygan county, Daniel P. Anderson, Circuit Judge, and the circuit court's order denying postconviction motions.   We reverse the court of appeals and remand the cause to the circuit court for a new trial.

In accordance with our order accepting this matter for review, the only issue to be addressed is "the admissibility of the defendant's incriminating statement obtained outside the presence of counsel after the defendant had invoked the right to counsel."

We conclude that the decision of the court of appeals affirming the trial court's order denying suppression of the statement of Carol Lampe must be reversed because the interrogation was conducted in violation of *Miranda*.

The facts of the underlying crime are not, at this juncture in the proceedings, of major concern. The defendant, a thirty-year-old married woman, mother of two children, was charged and convicted of one count of violation of secs. 939.05 and 943.32 (1) (b) and (2), Stats., party to crime of armed robbery; one count of violation of secs. 939.05 and 946.62, party to crime of concealing identity; one count of violation of secs 939.05 and 943.10 (1) (a), party to the crime of burglary; and one count of violation of secs. 939.05, 943.20 (1) (a) and (3) (b), and 939.62, party to the crime of felony theft and repeater.

Carol Lampe is the wife of Clayton Lampe, who is allegedly one of the principals in the crimes for which she was charged as a party. The basic crime was the armed robbery of a liquor store in Sheboygan on October 25, 1980. The allegation is that the robbery was planned earlier on the same day by Clayton Lampe, Carol Lampe, Judith Wolfgram, and Daniel Martin. Clayton Lampe, Wolfgram, and Martin were the actual participants in the robbery—Clayton as the driver of the get-away car. During the actual robbery, Carol Lampe, hereinafter defendant, stayed at her parents' home. The planned alibi allegedly was that the defendant was to tell her mother that Clayton, Wolfgram, and Martin were at that time sleeping upstairs. Allegedly, the defendant assisted in disguising Martin and Wolfgram before the robbery and also provided the weapons used in the holdup.

After the robbery the four hid out at a cottage owned by defendant's parents in northern Wisconsin, and they were there arrested on November 1, 1980. Defendant was advised of her *Miranda* rights. She refused to sign a waiver and demanded the right to consult counsel. No interrogation was conducted thereafter in Langlade county, but neither was an attorney then provided.

Defendant was returned to Sheboygan county three days later by two detectives of the Sheboygan police force, Korff and Hoppe. During the automobile trip on the return to Sheboygan, the detectives engaged defendant in "small talk," but there is no contention that any interrogation of Carol took place.

On November 4, 1980, at approximately 11:40 a.m., the defendant made her initial appearance in Sheboygan county before Circuit Judge John G. Buchen on the complaint of being party to the crime of armed robbery and party to the crime of concealing identity. At this initial appearance, the public defender, Thomas Piper, made a "special appearance"[1] on the defendant's behalf, and he

---

[1] Neither counsel at oral argument was able to define "special appearance" in a criminal case as the term was used by Attorney Piper. From the context of the case, we conclude that it meant that Attorney Piper was the *ad hoc*, or temporary, counsel for the public defender's office, but he was not personally assuming a commitment to the particular defendant for the course of the entire defense.

Additionally, it could be argued, although the issue is not before us, that a "special appearance" makes possible representation without the waiver of any jurisdictional defects that might later be claimed by a defendant. We do not pass upon the effect of an appearance so denominated in a criminal case.

As later portions of the record show, the defendant at the initial appearance asked for the appointment of an attorney. Hence, the finding of the circuit judge at the suppression proceeding that Carol Lampe never asked for an attorney after her initial request for one in Langlade county is clearly and unmistakably erroneous. The transcript of the initial appearance, however, is not in the record.

stated that, later that same day, the public defender would appoint a local attorney for the further representation of the defendant. Bail was set, and the defendant was ordered remanded to the Sheboygan county jail to await further proceedings.

At the conclusion of the initial appearance, in the courtroom, the district attorney, outside of the presence of the judge and outside of the presence of Attorney Piper, approached the defendant and initiated a conversation, saying:

"Carol, I don't believe you are the same nature or character as Clayton and the rest. I would like to have your cooperation. If you don't want to cooperate, of course, I will prosecute you as I intend to prosecute Clayton and the rest of them."

The defendant was then returned to the Sheboygan county jail. Sometime in the interim between this conversation, which took place shortly after noon, and 3:50 p.m. on November 4—the record is silent—Attorney Michael Roth was designated to represent the defendant.

Neither the district attorney nor the defendant knew that, in fact, counsel already had been appointed to continue defendant's representation when, at 3:50 p.m., the district attorney, accompanied by a female jail attendant, initiated a one-hour "interview" with the defendant in the jail. It is undisputed, however, that, at the initial appearance, the court was told that a local attorney would be appointed for the defendant by Attorney Piper that afternoon. The trial court later found, as a fact, that permanent counsel had been appointed prior to the district attorney's 3:50 p.m. interview.

*Miranda* rights were not explained nor recited to the defendant during the course of this afternoon interview. It is undisputed that the district attorney again told Carol she was not of the same character as Clayton and that her cooperation would benefit her.

The defendant testified, and the district attorney acknowledged, that, at this interview, the district attorney reminded her that she had two children about whom she should be concerned.

Near the end of the interview, when the district attorney stated that it would be wise for the defendant to cooperate, Carol Lampe asked whether she should have an attorney. The district attorney testified that he replied:

"Carol, an attorney will tell you at this point that you shouldn't say anything, and I can tell you that if you don't say anything, I am going to ask the next person to see if they will cooperate with us or not, and they will get the benefit of the cooperation, so it's your choice."

The jail matron, who was a witness to the interview, could not recall whether there was any discussion about Carol's children. She was definite in her recollection that near the end of the interview, after Carol asked "if she could have a lawyer then," the district attorney stated that she could.

At the conclusion of the interview, the district attorney asked Carol whether she was willing to cooperate. She said she was, and the district attorney made arrangements for detectives of the Sheboygan police department to interrogate her.

That evening she was taken to the Sheboygan Police Department for interrogation. Interrogation commenced at about 6:30 p.m. and terminated at about 1:00 a.m. on the morning of November 5, 1980. At the commencement of the interrogation, she was given the *Miranda* warnings. She signed a *Miranda* waiver and proceeded to give the police an inculpatory statement.

It was only the next day that she was informed that Attorney Michael Roth had, on the day before, prior to the interview conducted by the district attorney, been appointed to represent her. Subsequently, her counsel

moved for the suppression of the statement. The motion for suppression was denied by Judge Daniel P. Anderson, the circuit judge assigned to try the case. The matter subsequently proceeded to trial, and Carol Lampe was found guilty.

On May 18, 1981, she was sentenced to an indeterminate term of not more than ten years for party to the crime of armed robbery, two years for party to the crime of concealing identity, four years for party to the crime of burglary, and two years for party to the crime of felony theft, all to be served concurrently.

On postconviction motions, objections to the confession given to the detectives were again asserted, and a new trial was demanded. The trial judge denied relief. The court of appeals affirmed the findings of the trial court that the district attorney did not threaten Lampe and concluded that the finding that the waiver of Carol Lampe's *Miranda* rights was voluntarily, intelligently, and knowingly given was not against the great weight and clear preponderance of the evidence.

Thus the question on this review is the same as that addressed by the trial court subsequent to the motion to suppress the statement and is the same as that addressed by the court of appeals. The issue is whether the waiver of the defendant's right to counsel was made pursuant to the requirements of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

The defendant alleges on appeal that she did not make a knowing, intelligent, and voluntary waiver of her right to counsel, because the authorities initiated further interrogation before providing her access to an attorney, contrary to *Edwards v. Arizona*, 451 U.S. 477 (1981), and because her request for counsel had not been "scrupulously honored" in accordance with *Wentela v. State,* 95 Wis. 2d 283, 290 N.W.2d 313 (1980).

The state argues that *Edwards v. Arizona, supra,* is not a *per se* rule and, even if it were, the trial court

properly refused to suppress the statement, because the defendant had an opportunity to confer with counsel prior to the time that the law enforcement official requested her cooperation. It is also the state's position that the defendant's rights were scrupulously honored.

Following the submission of this case to the court, the United States Supreme Court examined the effect of *Edwards v. Arizona, supra,* in the case of *Solem v. Stumes,* —— U.S. —— (February 29, 1984). All of the Justices agreed that *Edwards* established a bright-line *per se* rule that, "once a suspect has invoked the right to counsel, any subsequent conversation must be initiated by him." *Solem,* slip op. p. 3. The court in *Solem* went on to state that, *"Edwards* established a bright-line rule to safeguard pre-existing rights, not a new substantive requirement." *Solem,* p. 8.[2]

Accordingly, the United States Supreme Court held *Edwards* not to be retroactive. The Court held that the "substantive" requirement was based on *Miranda* and its progeny, where the emphasis was on the question of whether, on an individual, case-by-case basis, a waiver of the right to counsel had been knowing, voluntary, and intelligent. Be that as it may, clearly following *Edwards,* we have a bright-line *per se* rule that will automatically result in the suppression of a statement, if the "authorities . . . resume questioning after a defendant has asked for an attorney." *Solem,* p. 10. It should be noted that the "bright-line" of *Edwards* does not reveal any particular brightness, for what is the "resumption of questioning" or what is the "initiation of conversation" or what is the "renewal of interrogation" is not

---

[2] At the time of final submission of this case, *Solem* had not been decided. Hence, a major reason for accepting the petition for review was to consider the then unanswered question of the retroactivity of *Edwards*. Thus, the legal framework in which we decide this case is far different than that which existed when the case was submitted.

very clear. Members of the United States Supreme Court seem to use these terms, having varying nuances, as synonymous. *Oregon v. Bradshaw*, —— U.S. ——, ——, 103 S. Ct. 2830, 2835 (1983), evinces a rather perfunctory attempt to define the meaning in a plurality opinion. All of the opinion writers—majority, concurrers, and dissenters—acknowledge the impreciseness of the language used. Fortunately, we are not obliged in this decision to clarify this semantic obscurity. While *Solem* makes it clear that *Edwards* is a *per se* rule, the ruling on retroactivity is not a sweeping one. The majority opinion, authored by Justice White, stated:

"At a minimum, nonretroactivity means that a decision is not to be applied in collateral review of final convictions. For purposes of this case, that is all we need decide about *Edwards.*" *Solem*, p. 12.

In the case of Carol Lampe, however, our review is not collateral. It is direct. The conviction is not yet final.

Hence, we could indulge in a very reasonable analysis that might show that *Edwards*, in respect to the present case, is retroactive and applies, by the application of its *per se* rule, to throw out Carol Lampe's statement. Under any of the language formulations of *Edwards* and *Solem*, it is clear that Carol Lampe specifically and unequivocally invoked her right to counsel, and thereafter the "authorities" "initiated" conversation or resumed interrogation. Under the very language of *Edwards*, if that case is applicable, the statement must be suppressed:

"[A]n accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484–85.

We believe, important as *Edwards* will prove to be in the future, it is unnecessary to apply the teachings of *Edwards* retroactively to suppress the confession taken from Carol Lampe in violation of *Miranda*.

The undisputed facts are that, at the time of Carol Lampe's arrest, she was informed of her *Miranda* rights and she asked that she be given an attorney. Her rights were scrupulously observed—at least until immediately after her initial appearance. At the initial appearance, she told the court she wanted counsel. She was told that an attorney would be appointed by the public defender's office that afternoon. She was represented at the initial hearing by the public defender, who made a "special appearance."

From the time of the public defender's appearance for her at the initial hearing, Carol Lampe was represented by the public defender's office. Whether she was represented by Attorney Piper or Attorney Roth of that office is immaterial. The appointment form in the record demonstrates that the defendant was represented by the public defender's office from the time of the initial hearing. Attorney Roth was merely designated as local counsel. There was no substitution of attorneys following Piper's appearance. There was a designation of a specific local attorney by the public defender.

Thus, it seems undisputable under the facts that Carol Lampe was represented. The state utilizes that obvious fact to support the assertion that, assuming Lampe did have representation, she therefore had "an opportunity" (thus posing the argument that the waiver was on the advice of counsel) to confer with counsel prior to the time she was approached by the authorities and prior to the time she agreed to cooperate. *See, Edwards,* 451 U.S. at 484–85. None of the cases that support the state's theory are similar on their facts to this case. Here, there is no evidence that Carol Lampe ever had the opportunity

to confer with, or even spoke to, her attorney prior to the time she was approached. *Miranda,* 384 U.S. at 474, makes it clear that the nominal representation is not sufficient. *Miranda* refers to the "opportunity to confer with the attorney." All we know about that hearing is that Lampe had counsel at the hearing and asked for permanent counsel to represent her.

As pointed out, the district attorney, immediately after the initial hearing, spoke to Carol Lampe in the courtroom and told her that, although she was not as culpable as her husband, he would prosecute her to the same extent unless she cooperated. A simple request to cooperate is not to be deemed as coercive. In *State v. Cydzik,* 60 Wis. 2d 683, 692, 211 N.W.2d 421 (1973), we said that a statement by a law enforcement officer that a defendant's cooperation would be to his benefit, "falls far short of creating the 'compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' "

A similar statement was made by this court in *State v. LaFernier,* 37 Wis. 2d 365, 377, 155 N.W.2d 93 (1967), and in *Turner v. State,* 76 Wis. 2d 1, 22, 250 N.W.2d 706 (1977).

In *State v. Drogsvold,* 104 Wis. 2d 247, 274, 311 N.W. 2d 243 (Ct. App. 1981), the court of appeals cited the language of *United States v. Ballard,* 586 F.2d 1060, 1063 (5th Cir. 1978), that " 'A truthful and noncoercive statement of the possible penalties which an accused faces may be given to the accused without overbearing one's free will.' "

At the late afternoon interview with Carol Lampe, the district attorney again sought her cooperation and reinitiated a conversation concerning the disposition of possible charges against her although he knew that she

had invoked her *Miranda* rights and had, in his presence, asked for the appointment of counsel. Additionally, she was, in fact, represented by the public defender's office at the time of the approach. He also knew that, in fact, she had no opportunity to confer with counsel. Thus, the problem is not whether the waiver was induced by coercion or threats but whether the waiver was taken under circumstances which violated the *Miranda*-conferred right to counsel and the right to be silent.

At this afternoon interview with the district attorney, Lampe asked, "Do you think I ought to have an attorney," to which the district attorney answered, according to his sworn testimony at trial:

"I said, 'Carol, an attorney will tell you at this point that you shouldn't say anything, and I can tell you that if you don't say anything, I am going to ask the next person to see if they will cooperate with us or not, and they will get the benefit of the cooperation, so it's your choice.'

"She said at that point, 'Well, I asked for an attorney this morning, and he hasn't showed up yet. It's not my fault he's not here. Won't he be surprised when he finds out I made a statement. It's time I started helping myself. I have been dumb long enough.' "

It is apparent that, in the face of the direct question, "Do you think I ought to have an attorney," the *Miranda* rule should have triggered an immediate cessation of the conversation even had there not been previous requests for a lawyer.

Thus, although Carol Lampe then went on to submit to interrogation by the city police, the subsequent interrogation and the formal waiver of her *Miranda* rights were the product of the district attorney's approach to her in violation of *Miranda*.

The conduct of the prosecution was in violation of the basic standards that *Miranda* sought to establish. While

*Miranda* has been criticized, the present majority of the United States Supreme Court, including the Chief Justice, has been firm in maintaining the constitutional right to counsel; and *Miranda* is concerned with that right, as well as the fifth amendment right against self-incrimination. As the Chief Justice has recently stated, "I would neither overrule *Miranda,* disparage it, nor extend it at this late date." *Rhode Island v. Innis,* 446 U.S. 291, 304 (1980) (concurring opinion).

Moreover, it is now clear, under *Edwards* and *Solem,* that any initiation of conversation after an invocation of the *Miranda* rights is a *per se* violation.

Some of the *Miranda* problems present hard cases. This one does not. This is a *Miranda* violation in its simplest form—the renewal or initiation of custodial conversation after there was a request for counsel and counsel had been appointed but where there had been no opportunity for consultation.

Although *Wentela v. State,* 95 Wis. 2d 283, 290 N.W. 2d 313 (1980), arises out of different facts than *Edwards,* it, like *Edwards,* seeks to implement the considerations that impelled the *Miranda* decision.

*Wentela* stated the general proposition that a waiver of *Miranda* rights would not be found in circumstances where the request for right to counsel was not "scrupulously honored." In the instant case the district attorney approached the defendant only minutes after her courtroom request had been made for counsel and the assurance had been given that permanent counsel would be appointed that day. Also, it is undisputed that the defendant had specifically stated, after being given the *Miranda* admonitions, that she wished to have a lawyer and to remain silent until a lawyer could be appointed. Basically, *Wentela* held that, once a person states that

an attorney should be appointed, interrogation must cease until the attorney is present, at which time the person has the right to confer with counsel and to have the attorney present during any subsequent questioning or to remain silent. It must be recalled that the district attorney's approach to Carol Lampe came immediately after the courtroom request for counsel. There was no opportunity to reconsider the options under *Miranda*, and the *Miranda* warnings were not given on that occasion. Moreover, at the time of the afternoon interview, counsel had in fact been appointed on a permanent basis; yet, Lampe was not informed what steps were being taken to secure representation for her, and the prosecution did not attempt to enlighten her in this respect. Most importantly, from the time of the initial appearance, Lampe was represented by the public defender's office; yet, the district attorney talked to her, and he elicited from her a statement that she would be willing to submit to interrogation by the police officers. Under our own interpretation of *Miranda*, separate and apart from *Edwards* and *Solem*, we conclude, pursuant to the teachings of *Wentela*, the state failed to "scrupulously honor" Carol Lampe's right to counsel.

The decision of the court of appeals is reversed. Accordingly, the statement given by Carol Lampe must be suppressed. The order denying postconviction relief is reversed. The conviction is vacated, and the case is remanded to the circuit court for Sheboygan county for a new trial.

*By the Court.*—Decision reversed, and cause remanded to the circuit court.