STATE OF NORTH CAROLINA v. GEORGIA JACKSON TORRES

No. 316A90

(Filed 10 January 1992)

**1. Evidence and Witnesses § 1349 (NCI4th) — voluntariness of confession — findings of fact — appellate review**

A trial court's findings of fact following a voir dire hearing on the voluntariness of a confession are conclusive on appeal if supported by competent evidence even though the evidence is conflicting.

**Am Jur 2d, Evidence § 590.**

**2. Evidence and Witnesses § 1240 (NCI4th) — inquiry about attorney — defendant in custody**

Defendant was in custody for *Miranda* purposes at the time she inquired of a deputy sheriff and the sheriff about her need for an attorney where defendant was escorted to the sheriff's department in a patrol car by a deputy sheriff shortly after her husband was shot; although defendant's friends and family had some access to her while she awaited interrogation, she was under constant police supervision from the moment she arrived at the sheriff's department; she was in the sheriff's department conference room with a deputy sheriff

STATE v. TORRES

[330 N.C. 517 (1992)]

from 7:00 p.m. until 10:00 p.m.; the deputy testified on voir dire that he would have detained defendant had she attempted to leave; at some point during this time, defendant was informed that her husband had died; around 10:00 p.m., defendant went to the sheriff's office, where she was told that she would be interviewed by a deputy sheriff and an SBI agent; there is no evidence to indicate that defendant was ever told she was free to leave; and defendant inquired of the deputy and the sheriff about her need for an attorney at times during the evening prior to her interrogation.

**Am Jur 2d, Evidence §§ 545, 555.**

3. **Evidence and Witnesses § 1252 (NCI4th)— impending interrogation—invocation of right to counsel**

Defendant could invoke her right to have counsel present during her impending interrogation even though she was not being actively questioned at the time she inquired about an attorney.

**Am Jur 2d, Evidence § 556.**

4. **Evidence and Witnesses § 1252 (NCI4th)— invocation of right to counsel**

There are no "magic words" which must be uttered in order to invoke one's right to counsel. The crucial determination is whether the person has indicated "in any manner" a desire to have the help of an attorney during custodial interrogation. In deciding whether a person has invoked his or her right to counsel, a court must look not only at the words spoken but the context in which they are spoken as well.

**Am Jur 2d, Evidence § 555.**

**What constitutes assertion of right to counsel following Miranda warnings—state cases. 83 ALR4th 443.**

5. **Evidence and Witnesses § 1252 (NCI3d)— ambiguous invocation of right to counsel—cessation of interrogation**

When faced with an ambiguous invocation of counsel, interrogation must immediately cease except for narrow questions designed to clarify the person's true intent.

**Am Jur 2d, Evidence § 555.**

STATE v. TORRES

[330 N.C. 517 (1992)]

**What constitutes assertion of right to counsel following Miranda warnings—state cases. 83 ALR4th 443.**

**6. Evidence and Witnesses § 1252 (NCI3d)— inquiry about need for attorney—invocation of right to counsel**

Defendant invoked her right to counsel when she inquired of sheriff's officials whether she needed an attorney. Thus, any statement made by her in the absence of counsel following police-initiated custodial interrogation is presumed involuntary and therefore inadmissible as substantive evidence even though she was subsequently read her *Miranda* rights and executed a waiver.

**Am Jur 2d, Evidence § 555.**

**What constitutes assertion of right to counsel following Miranda warnings—state cases. 83 ALR4th 443.**

**7. Criminal Law § 1166 (NCI4th)— aggravating factor—mental infirmity—intoxication of victim**

There is no requirement that a court must find the aggravating factor that the victim was mentally infirm if the victim was intoxicated and the defendant knew it. Rather, the gravamen of the mental or physical infirmity aggravating factor is vulnerability, and this factor is properly found if the evidence shows that the victim was targeted because of a mental or physical infirmity or that the defendant took advantage of the infirmity.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial § 1760.**

Justice MARTIN concurring.

APPEAL by defendant pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 99 N.C. App. 364, 393 S.E.2d 535 (1990), finding no error in defendant's conviction of murder in the second degree before *Strickland, J.,* at the 10 October 1988 Criminal Session of Superior Court, BEAUFORT County. Discretionary review as to additional issues allowed by the Supreme Court 5 December 1990. Heard in the Supreme Court 9 September 1991.

*Lacy H. Thornburg, Attorney General, by Steven R. Bryant, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

*Michelle F. Robertson, for North Carolina Association of Women Attorneys, amicus curiae.*

FRYE, Justice.

While in police custody awaiting questioning about the shooting death of her twenty-nine-year-old husband, defendant asked sheriff officials whether she needed an attorney. She was told she did not. A short time later, defendant was read her *Miranda* rights and agreed to make a statement. The statement, in which defendant confessed to shooting her husband, was introduced at trial over defendant's objection. Defendant now petitions this Court for a new trial, arguing that the trial court erred by admitting the statement.

The issue presented is whether defendant invoked her right under the Fifth and Fourteenth Amendments to have counsel present during custodial interrogation, thus triggering the prophylactic rules enunciated in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378 (1981). We hold that defendant did invoke her right to counsel and that her statement was improperly admitted into evidence. We therefore reverse the Court of Appeals' decision and remand for a new trial.

I.

Defendant was indicted on 14 March 1988 by a Beaufort County Grand Jury for the murder of her husband, Florentino "Tino" Torres. At the beginning of the trial, the State announced it was proceeding on a charge of second-degree murder.

Undisputed evidence presented at defendant's trial and sentencing hearing demonstrates that Georgia Jackson Torres, a thirty-nine-year-old nursing home dietician, was an abused and battered spouse. According to testimony from psychiatrist Sharon Willingham, defendant had been stabbed, slapped, choked, kicked, thrown against furniture, and threatened—both physically and verbally—during her sixteen-month marriage to Tino Torres. All episodes of abuse occurred when Mr. Torres was intoxicated. Dr. Willingham, Medical Director of the Craven County Regional Medical Center Psychiatric Unit, testified that defendant "meets all the qualifications for the

battered spouse syndrome," a clinically recognized syndrome in which the victim is subjected to numerous episodes of abuse by the victim's spouse.

Defendant's statement to police, the backbone of the State's case, was read to the jury by State Bureau of Investigation Agent Lewis Young. According to the statement:

Defendant and Mr. Torres had an argument on the evening of 27 February 1988. He slept away from home and called the next morning, telling defendant that he would drop by their house later that day to pick up his clothes. Mr. Torres had been drinking when he arrived at their house in rural Beaufort County in the early evening on 28 February 1988. He became abusive, kicking a box of clothes, pouring cologne on a dresser and pushing defendant against the dresser and the wall. Defendant's three children were watching from another room, and at one point Mr. Torres pushed defendant's daughter Lisa. A few moments later, when it appeared that Mr. Torres was again moving toward Lisa, defendant picked up a metal baseball bat and swung it at Mr. Torres, who snatched the bat from her hands. Defendant told her husband that she could not take any more abuse and wanted him to leave. He stepped toward her and she retreated into her son's room. She then picked up a semi-automatic .22-caliber rifle which her daughter had brought to the house that morning. Defendant told her husband that she was afraid he was going to beat her; she begged him to leave, but he only laughed and continued toward her. He reached over the rifle and swung at her with his right fist. Defendant fired one shot, hitting Mr. Torres. He kept coming at her, and she fired two more shots.

In other testimony, Dr. Stan Harris testified that there were *five* gunshot wounds. Dr. Harris, who performed the autopsy, said the fatal bullet entered about three inches to the left of the middle of the victim's back below the rib cage. Dr. Harris testified that it was possible this wound might have been inflicted while Mr. Torres was lying on the floor. Dr. Harris also testified that, judging from the amount of alcohol in his blood, Mr. Torres was intoxicated at the time of his death.

On 13 October 1988, the jury returned a verdict of guilty of second-degree murder. After finding aggravating and mitigating factors, Judge Strickland sentenced defendant to thirty years in prison, double the fifteen-year presumptive sentence. The Court

of Appeals, by a 2-1 vote, upheld the conviction and sentence. *State v. Torres*, 99 N.C. App. 364, 393 S.E.2d 535 (1990) (Parker, J., concurring in result and Greene, J., dissenting). Defendant appeals to this Court as of right based on Judge Greene's dissent. We also allowed discretionary review of three issues relating to defendant's sentence.

## II.

[1]   Prior to the admission of defendant's statement, the trial judge held an extensive voir dire hearing. Much of the testimony was contradictory. Following the hearing, Judge Strickland made twenty-three findings of fact. The following five findings are particularly pertinent to our inquiry:

> 4. That on the evening of February 28th, 1988, the defendant, Georgia Jackson Torres, was at her residence, this being after the death of one Florentine [sic] Conteras Torress [sic], and that several deputy sheriffs had arrived at said premises; Deputy Sheriff Sykes made inquiry about what happened the night before and that subsequently Deputy Sheriff Joe Sykes transported the defendant, Georgin [sic] Ann Torres, along with defendant's close friend, Brenda Purser, to the Sheriff's Department in the City of Washington.

>    . . . .

> 7. That before the interview of the defendant by S.B.I. Agent Lewis Young and Deputy Sheriff Donald Deese, the defendant was in the conference room of the Sheriff's Department in the company of Deputy Sheriff Sykes and was subsequently in the office of Sheriff Sheppard.

> 8. That her children were in and out and at the point where the defendant made inquiry about an attorney she was advised that she did not need one at that time.

> 9. That the defendant had not been placed under arrest during any such inquiry.

>    . . . .

> 12. That while the defendant was in Sheriff Sheppard's office she was advised that Officer Donald Deese and S.B.I. Agent Lewis Young would question her and she asked if somebody could be with her stating that she wanted Charlie Purser and Brenda Purser to be with her and that was arranged; that

STATE v. TORRES

[330 N.C. 517 (1992)]

thereafter S.B.I. Agent Lewis Young and Deputy Sheriff Donald Deese went to Sheriff Sheppard's office to begin the interview with the defendant . . . .

A trial court's findings of fact following a voir dire hearing on the voluntariness of a confession are conclusive on appeal if supported by competent evidence in the record. *State v. Massey*, 316 N.C. 558, 573, 342 S.E.2d 811, 820 (1986). This is so even though the evidence is conflicting. *Id.* (citing *State v. Jackson*, 308 N.C. 549, 569, 304 S.E.2d 134, 145 (1983)).

We hold that there is competent evidence in the record to support each of the preceding findings of fact. Specifically, as to the key finding that defendant "made inquiry about an attorney," there was testimony by two witnesses that defendant asked Sheriff Sheppard whether she needed an attorney and testimony by one witness that defendant also asked the same question of Deputy Sykes.

Defendant's friend, Brenda Purser, testified: "Georgianna asked [Sheriff] Nelson [Sheppard] did she need a lawyer and he told her no that it was best right now to cooperate and tell the truth and that they had been friends for a long time." Mrs. Purser further testified that defendant even asked Sheriff Sheppard about a specific attorney by name, James R. Vosburgh of Washington, N.C. Mrs. Purser's husband, Charlie, also testified that he was present when defendant asked the sheriff whether she needed an attorney. Mr. Purser testified that the sheriff said, "she didn't need a lawyer right then."

Mrs. Purser also testified that while she and defendant were in the conference room with Deputy Sykes, defendant asked Deputy Sykes whether she needed an attorney. In fact, according to Mrs. Purser's testimony, Deputy Sykes gave Mrs. Purser a telephone book to look up attorney Vosburgh's telephone number. Mrs. Purser never made the telephone call, however. "I went to pick up the phone," testified Mrs. Purser, "and that's when he [Deputy Sykes] told her she didn't need a lawyer right now."

### III.

The United States Supreme Court, in one of its more recent explorations of Fifth Amendment jurisprudence, noted that the landmark case of *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, "established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present." *McNeil v.*

*Wisconsin*, --- U.S. ---, 115 L. Ed. 2d 158, 167 (1991). *See also Minnick v. Mississippi*, --- U.S. ---, 112 L. Ed. 2d 489, 494 (1990) ("To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, we have held that the police must terminate interrogation of an accused in custody if the accused requests the assistance of counsel.").

In *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, the Court "established a second layer of prophylaxis for the *Miranda* right to counsel." *McNeil*, --- U.S. at ---, 115 L. Ed. 2d at 167. This "second layer" provides that:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with police.

*Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 386. This rigid prophylactic rule is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *McNeil*, --- U.S. at ---, 115 L. Ed. 2d at 168 (quoting *Michigan v. Harvey*, 494 U.S. 344, 350, 108 L. Ed. 2d 293, 302 (1990)). "If police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." *McNeil*, --- U.S. at ---, 115 L. Ed. 2d at 167-68. Furthermore, it matters not whether the subsequent police-initiated contact is conducted in good faith by officers unaware that the defendant had previously invoked her right to counsel. *Arizona v. Roberson*, 486 U.S. 675, 687-88, 100 L. Ed. 2d 704, 717 (1988). The burden is on the police officer to determine whether the accused has invoked her right to counsel. *Id.*

## IV.

The State argues that defendant's statement was properly admitted into evidence at trial because: (1) *Miranda* protections

only attach when an accused is (a) in custody and (b) actively under interrogation; in this case, the State argues, defendant was neither in custody nor being questioned at the time she asked about an attorney; and (2) even if her *Miranda* rights had attached, defendant's inquiries concerning whether she needed an attorney were not invocations of her right to have an attorney present during custodial interrogation.

[2]  The State's first argument is that defendant was not in custody at the time she asked about an attorney and therefore *Miranda* simply does not apply. We disagree.

We first note that, although the trial judge made a finding of fact that defendant was not under arrest at the time she asked about counsel, there was no finding as to whether defendant was in custody. The absence of such a finding, however, does not prevent this Court from examining the record and determining whether defendant was in custody. *State v. Davis*, 305 N.C. 400, 414-15, 290 S.E.2d 574, 583 (1982) (determination of whether a defendant is in custody for *Miranda* purposes "requires an application of fixed rules of law and results in a conclusion of law and not a finding of fact.").

It is well settled that the test for whether a person is "in custody" for *Miranda* purposes is whether a reasonable person in the suspect's position would feel free to leave or compelled to stay. *State v. Smith*, 317 N.C. 100, 104, 343 S.E.2d 518, 520 (1986); *State v. Jackson*, 308 N.C. 549, 576-77, 304 S.E.2d 134, 149 (1983); *Davis*, 305 N.C. at 410, 290 S.E.2d at 581; *see also Berkemer v. McCarty*, 468 U.S. 420, 442, 82 L. Ed. 2d 317, 336 (1984); *Oregon v. Mathiason*, 429 U.S. 492, 494-95, 50 L. Ed. 2d 714, 719 (1977). This objective test must necessarily be applied on a case-by-case basis, taking into account the facts and circumstances surrounding each case.

In the present case, the following facts are undisputed: defendant was escorted to the sheriff's department in a patrol car by Deputy Sykes shortly after her husband was shot. Although defendant's friends and family had some access to her while she awaited interrogation, defendant was under constant police supervision from the moment she arrived at the sheriff's department. From 7 p.m. until 10 p.m., she was in the sheriff's department conference room with Deputy Sykes, who testified on voir dire that he would have detained her had she attempted to leave. At some point during

this time, defendant was informed that her husband had died. Around 10 p.m., defendant went to Sheriff Sheppard's office, where she was told that she would be interviewed by Deputy Sheriff Deese and S.B.I. Agent Young. Questioning began at 10:35 p.m. and lasted until 12:40 a.m. There is no evidence to suggest that defendant was ever told she was free to leave.

We believe that a reasonable person, knowing she had just shot her spouse, having been escorted to the sheriff's department by a sheriff's deputy, kept under constant police supervision and never informed that she was free to leave, would not feel free to get up and go. On the contrary, a reasonable person in defendant's position would feel compelled to stay. We hold defendant was in custody at the time she inquired about an attorney.

**[3]**   Next, the State argues that defendant could not have invoked her right to counsel because she was not being questioned at the time she inquired about an attorney. The State correctly states the facts, but misstates the law. It is true that neither Deputy Sykes nor Sheriff Sheppard was actively questioning defendant at the time she asked about counsel. That, however, does not mean defendant was forbidden from invoking her right to have counsel present during her impending interrogation.

The Supreme Court addressed this very issue in *Miranda*. If defendant "at any stage of the process" indicates her desire to consult with counsel, all questioning must cease. *Miranda*, 384 U.S. at 444-45, 16 L. Ed. 2d at 707. Later in the same opinion, the Court was more specific:

> An individual need not make a pre-interrogation request for a lawyer. *While such request affirmatively secures his right to have one,* his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we have delineated have been given.

*Miranda*, 384 U.S. at 470, 16 L. Ed. 2d at 721 (emphasis added). Thus, although an individual cannot *waive* her right to counsel prior to receiving *Miranda* warnings, a suspect in custody can certainly *assert* her right to have counsel present during her impending interrogation prior to *Miranda* warnings and the actual onset of questioning. *See State v. Collins,* 122 Wis. 2d 320, 329, 363 N.W.2d 229, 233 (App. 1984) (suspect, taken into custody at his

**STATE v. TORRES**

[330 N.C. 517 (1992)]

home, invoked his right to have counsel present during his impending interrogation, although request for counsel came prior to *Miranda* warnings and onset of questioning).

The State cites *McNeil v. Wisconsin*, --- U.S. ---, 115 L. Ed. 2d 158, in support of its argument that a person cannot "anticipatorily invoke" her right to counsel. In *McNeil*, the Court noted in a footnote that it had never held that a person could "invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation . . . .'" *McNeil*, --- U.S. at --- n.3, 115 L. Ed. 2d at 171 n.3. The examples of "anticipatory invocation" cited by the Court in that same footnote, however, make clear that the Court had in mind situations in which a person was not in custody at the time of her invocation. Accordingly, the Court suggested that a person may not be permitted to invoke her right to counsel at a preliminary hearing or "by a letter prior to arrest, or indeed even prior to identification as a suspect." *Id.*

These situations are, of course, far removed from the situation at hand, in which defendant was in custody at the sheriff's department awaiting interrogation. It would make little sense to require a defendant already in custody to wait until the onset of questioning or the recitation of her *Miranda* rights before being permitted to invoke her right to counsel. We therefore hold that defendant in this case could invoke her right to have counsel present during her impending interrogation, even though she was not being actively questioned at the time she inquired about an attorney.

[4] Finally, the State argues that even if defendant's *Miranda* rights had attached, defendant did not invoke her right to counsel when she asked sheriff's officials whether she needed an attorney. The State suggests that in order for someone to invoke her right to counsel, the invocation must always be precise and unequivocal. We disagree. Such a narrow approach is neither supported by Supreme Court precedent nor sound policy considerations.[1]

---

1. The State cites *State v. McQueen*, 324 N.C. 118, 377 S.E.2d 38 (1989), for the proposition that a defendant must "plainly invoke" her right to counsel. *McQueen* involved a complicated fact pattern in which the defendant apparently invoked his right to counsel, then volunteered statements to police, was re-*Mirandized*, invoked his right to counsel again, and finally volunteered additional statements. *McQueen*, 324 N.C. at 127-32, 377 S.E.2d at 43-46. Although there is language in *McQueen* to support the State's position, *McQueen*, 324 N.C. at 132, 377 S.E.2d at 46, we believe the Court's attention was focused primarily on whether the defendant had, on two separate occasions, volunteered statements after invoking

Chief Justice Warren, writing for the Court in *Miranda*, stated that when a person "indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda*, 384 U.S. at 444-45, 16 L. Ed. 2d at 707 (emphasis added). Two decades later, Chief Justice Rehnquist, writing for the Court in *Connecticut v. Barrett*, 479 U.S. 523, 93 L. Ed. 2d 920 (1987), reiterated the "settled approach . . . [that] requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel." *Id.* at 529, 93 L. Ed. 2d at 928 (quoting *Michigan v. Jackson*, 475 U.S. 625, 633, 89 L. Ed. 2d 631, 640 (1986)). *See also People v. Fish*, 660 P.2d 505, 509 (Colo. 1983) ("A request for counsel need not be sophisticated or in a legally proper form."); *People v. Randall*, 1 Cal. 3d 948, 955, 464 P.2d 114, 118, 83 Cal. Rptr. 658, 662 (1970) ("To strictly limit the manner in which a suspect may assert the privilege, or to demand that it be invoked with unmistakable clarity (resolving any ambiguity against the defendant) would subvert *Miranda*'s prophylactic intent.").

There are no "magic words" which must be uttered in order to invoke one's right to counsel. The crucial determination is whether the person has indicated "in any manner" a desire to have the help of an attorney during custodial interrogation. To require precise and exact language to invoke one's right to counsel would undermine *Miranda* by working to the disadvantage of those who arguably need its protections the most: the uneducated and those unfamiliar with the criminal justice system. *See Randall*, 1 Cal. 3d at 955, 464 P.2d at 118, 83 Cal. Rptr. at 662. In deciding whether a person has invoked her right to counsel, therefore, a court must look not only at the words spoken, but the context in which they are spoken as well.

Turning then to the facts of this case, the trial judge found that defendant was taken to the sheriff's department by Deputy Sykes shortly after her husband was shot. She was placed in a conference room where she stayed for three hours in the company of Deputy Sykes. Around 10 p.m., defendant went to Sheriff Sheppard's office where she was told that she would be interrogated by a deputy sheriff and an S.B.I. agent. The trial judge found

_____

his right to counsel. We do not believe, as the State suggests, that the Court in *McQueen* explicitly held that a defendant's invocation of counsel must always be plain and unequivocal.

STATE v. TORRES

[330 N.C. 517 (1992)]

that at some point in the evening, defendant "made inquiry about an attorney . . . [and] was advised that she did not need one at that time." It is not clear from this finding of fact exactly when this inquiry was made; however, witnesses testified that defendant actually made two such inquiries: one to Deputy Sykes, another to Sheriff Sheppard. Based on these facts, we believe defendant indicated a desire, on at least one occasion, to have the help of an attorney during police interrogation. *See State v. Lampe*, 119 Wis. 2d 206, 217, 349 N.W.2d 677, 683 (1984) ("It is apparent that, in the face of the direct question, 'Do you think I ought to have an attorney,' the *Miranda* rule should have triggered an immediate cessation of the conversation even had there not been previous requests for a lawyer."); *People v. Alexander*, 79 Mich. App. 495, 498, 261 N.W.2d 63, 64 (1977), *cert. denied*, 436 U.S. 958, 57 L. Ed. 2d 1123 (1979) (trial court did not err by finding that defendant invoked his right to counsel by asking police whether he should have an attorney); *People v. Superior Court of Mono County*, 15 Cal. 3d 729, 736, 542 P.2d 1390, 1395, 125 Cal. Rptr. 798, 803, (1975), *cert. denied*, 429 U.S. 816, 50 L. Ed. 2d 76 (1976) (defendants' question to police, "Do you think we need an attorney," constitutes "ample evidence" that defendants invoked their Fifth Amendment right to counsel); *but see Ruffin v. U.S.*, 524 A.2d 685, 701 (D.C. App. 1987) (limited questions permitted to clarify defendant's intent where court found defendant's inquiry as to whether he needed an attorney to be "equivocal").

[5] We recognize that some courts have found, on the facts of a particular case, a question such as "Do you think I need an attorney" to be equivocal or ambiguous. *E.g., Ruffin*, 524 A.2d at 700; *Russell v. Texas*, 727 S.W.2d 573, 575-76 (Tex. Crim. App.), *cert. denied*, 484 U.S. 856, 98 L. Ed. 2d 119 (1987). The Supreme Court has expressly left unresolved the question of what is the appropriate response to an ambiguous invocation of counsel. *Barrett*, 479 U.S. at 529 n.3, 93 L. Ed. 2d at 928 n.3; *Smith v. Illinois*, 469 U.S. 91, 96-97 & n.3, 83 L. Ed. 2d 488, 494 & n.3 (1984). The majority rule, however, appears to be that, when faced with an ambiguous invocation of counsel, interrogation must immediately cease except for narrow questions designed to clarify the person's true intent. *E.g., Crawford v. State*, 580 A.2d 571, 576-77 (Del. 1990); *Towne v. Dugger*, 899 F.2d 1104, 1107 (11th Cir.), *cert. denied*, --- U.S. ---, 112 L. Ed. 2d 546 (1990). Under this rule, therefore, even if defendant's invocation in this case is termed ambiguous,

the result remains the same. The officers clearly did not seek to clarify defendant's intent; instead, they dissuaded defendant from exercising her right to have an attorney present during interrogation. Under these circumstances, we must resolve any ambiguity in favor of the individual. *See Towne*, 899 F.2d at 1110 ("because [defendant] made an equivocal request for an attorney that was never clarified, and [defendant] did not initiate further interrogation, the confession was obtained in violation of his Fifth Amendment rights.").

[6]   We therefore hold that defendant invoked her right to counsel when she inquired of sheriff's officials whether she needed an attorney. Thus, any statement made by her in the absence of counsel following police-initiated custodial interrogation "is presumed involuntary and therefore inadmissible as substantive evidence at trial." *McNeil*, --- U.S. at ---, 115 L. Ed. 2d at 167-68. This is true even where, as in this case, the suspect subsequently is read her *Miranda* rights and executes a waiver. *Edwards*, 451 U.S. at 484, 68 L. Ed. 2d at 386. Because defendant's confession was erroneously introduced into evidence against her, she is entitled to a new trial.

[7]   In view of the fact that defendant gets a new trial, it is unnecessary to address in detail all of the alleged sentencing errors. However, we do find it necessary to disavow the following language from the Court of Appeals' decision: "Where, as here, the preponderance of the evidence shows that the victim was intoxicated and the defendant knew it, the trial court *must* find that the victim was mentally infirmed [sic] at the time he was killed." *Torres*, 99 N.C. App. at 372, 393 S.E.2d at 540 (emphasis added). This is an incorrect statement of the law.

The gravamen of the "mental or physical infirmity" aggravating factor is vulnerability. *State v. Drayton*, 321 N.C. 512, 514, 364 S.E.2d 121, 122 (1988). "If the evidence shows the victim was targeted because of a physical [or mental] infirmity or that the defendant took advantage of the infirmity, the aggravating factor is properly found." *Id.* There is, therefore, no *requirement* that a court *must* find this aggravating factor if the victim was intoxicated and the defendant knew it. We also take note that, as pointed out in an amicus curiae brief by the North Carolina Association of Women Attorneys, it may be particularly inappropriate to find this aggravating factor in cases involving battered spouse syndrome because

of the overwhelming evidence that abusive spouses routinely use alcohol as a facilitator of aggression.

For the above-stated reasons, the decision of the Court of Appeals is reversed and this case is remanded for a new trial.

Reversed and remanded.

Justice MARTIN concurring.

I agree with and join in the well-reasoned opinion of the majority. I write separately to give additional support for the majority's holding that the trial court violated fundamental rights of the defendant in admitting her statement into evidence. My concurrence is based solely upon adequate and independent state constitutional grounds. *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201 (1983); *Jackson v. Housing Authority of High Point*, 321 N.C. 584, 364 S.E.2d 416 (1988).

Article I, section 23 of the Constitution of North Carolina provides that

> In all criminal prosecutions, every person charged with crime has the right to be informed of the accusation and to confront the accusers and witnesses with other testimony, and to have counsel for defense, and not be compelled to give self-incriminating evidence, or to pay costs, jail fees, or necessary witnesses fees of the defense, unless found guilty.

In the present case, evidence incriminating the defendant in the form of a confession was offered by the State at trial. The issue presented by her appeal is whether her right not to be compelled to give self-incriminating evidence was violated, rendering the confession inadmissible. In resolving this issue, it is necessary to ascertain whether essential procedural safeguards of the right not to give self-incriminating evidence were enforced and to examine the facts and circumstances surrounding the obtaining of the confession on 28 February 1988.[1]

Article I, section 23 of our Constitution grants a panoply of rights to persons charged with crimes. Most of these rights may

---

1. North Carolina's strong policy in support of the right to be free not to give self-incriminating evidence is illustrated in N.C.G.S. § 15A-602 which provides: "Except when he is accompanied by his counsel, the judge must inform the defendant of his right to remain silent and that anything he says may be used against him."

STATE v. TORRES

[330 N.C. 517 (1992)]

be invoked when a person is actually charged with crime.[2] However, in regard to the right not to be compelled to give self-incriminating evidence, this Court recognized over one hundred years ago: "The fair interpretation of this clause seems to be to secure one who is *or may be* accused of crime, from making any compulsory revelations which may be given in evidence against him on his trial for the offence [sic]." *LaFontaine v. Southern Underwriters*, 83 N.C. 132, 138 (1880); *see also State v. Eason*, 328 N.C. 409, 402 S.E.2d 813 (1991).

> [O]pinions of this Court make it clear that [under the U.S. Constitution,] when the State seeks to offer in evidence a defendant's in-custody statements, made in response to police interrogation and in the absence of counsel, the State must affirmatively show not only that the defendant was fully informed of his rights but also that he knowingly and intelligently waived his right to counsel.

*State v. Biggs*, 289 N.C. 522, 531, 223 S.E.2d 371, 377 (1976).

Similarly, when the State seeks to offer a defendant's in-custody statements made in response to police interrogation in the absence of counsel, our Constitution also requires, at a minimum, such an affirmative showing by the State that the defendant was fully informed of his rights, and that he knowingly and intelligently waived his right to counsel.

I first address what is required by our state Constitution in order to fully inform a defendant of his rights. Our cases often refer to the procedural safeguards required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), as the source of the requirement that law enforcement officers inform defendants of their federal constitutional rights. I conclude today that article I, section 23 also requires that, at the onset of custodial interrogation, a defendant must be informed of and given an opportunity to acknowledge understanding of these same rights. I adopt the holding in *Miranda*:

> Prior to any questioning, the [accused] person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained

---

2. The rights to be informed of the accusation and confront accusers, for example, presuppose being charged with a crime before they may be exercised.

or appointed. The defendant may waive effectuation of these rights, provided that waiver is made voluntarily, knowingly and intelligently.

*Miranda*, 384 U.S. at 444, 16 L. Ed. 2d at 706-707.

I agree with the majority's analysis of the facts and conclusion that from her arrival at 7:00 P.M. on 28 February 1988 and throughout that evening at the sheriff's department building in Washington, North Carolina, Georgia Torres was in the custody of police officials and awaiting or undergoing interrogation. Accordingly, the procedural safeguards required by article I, section 23 to protect her from being compelled to give self-incriminating evidence should have been observed. These include being allowed to exercise, without interference, the right to counsel during such interrogation.[3]

I conclude that prior to making the confession, the defendant's words and actions were tantamount to an invocation of her right to counsel. Again, I adopt the language of *Miranda*: "If, however, [the accused person] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda*, 384 U.S at 444-445, 16 L. Ed. 2d at 707. Applying article I, section 23 to the facts of this case, once a defendant has invoked her right to counsel all questioning must cease and police cannot reinitiate interrogation of the accused unless an attorney is present. (*Cf. Edwards v. Arizona*, 451 U.S. 477, 484-485, 68 L. Ed. 2d 378, 386 (1981)) ("[H]aving [invoked his right to counsel, an accused] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication . . . with the police."); *Minnick v. Mississippi*, --- U.S. ---, ---,

---

3. Prior to its repeal by the legislature in anticipation of the adoption of the new Criminal Procedure Act, North Carolina had a statute based on article I, section 23, which provided in part as follows:

> Upon the arrest, detention, or deprivation of the liberties of any person by an officer in this State with or without warrant, it shall be the duty of the officer making the arrest . . . to permit the person so arrested to communicate with counsel and friends *immediately, and the right of such person to communicate with counsel . . . shall not be denied.*

*State v. Hill*, 277 N.C. at 552, 178 S.E.2d at 465 (quoting N.C.G.S. § 15-47 (1937)). Although repealed, the rights enunciated in the statute are constitutional rights springing from article I, section 23; the repeal of an implementing statute in no way abrogates these rights.

112 L. Ed. 2d 489, 498 (1990) ("[W]hen counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney.").

Here, rather than abandoning the interrogation when the defendant invoked her right to counsel, the officials dissuaded her from telephoning an attorney. This violated the defendant's rights under our Constitution and rendered her subsequent confession inadmissible.

Another route to the same conclusion is to analyze the defendant's alleged waiver of the right to counsel. The State argues that no matter what came before, at the point just prior to the onset of questioning the defendant was read her *Miranda* rights, and she waived them. In order to determine whether the State has met its burden of showing that a defendant knowingly and intelligently waived right to counsel, courts must look beneath the recitals of rights by law enforcement officers to the conditions under which the defendant heard and responded to those recitals.

Here, as in *State v. Pruitt,*

[T]here was plenary evidence that the procedural safeguards required by the *Miranda* decision were recited by the officers and that the defendant signed a waiver stating that [s]he understood [her] constitutional rights, including [her] right to counsel. Even so, the ultimate test of the admissibility of a confession still remains whether the statement made by the accused was in fact voluntarily and understandingly made. The fact that the technical procedural requirements of *Miranda* are demonstrated by the prosecution does not, however, standing alone, control the question of whether a confession was voluntarily and understandingly made. The answer to this question must be found from a consideration of the entire record. *Davis v. North Carolina,* 384 U.S. 737, 16 L. Ed. 2d 895 (1966).

*Pruitt,* 286 N.C. 442, 454, 212 S.E.2d 92, 100 (1975) (citations omitted); *State v. White,* 291 N.C. 118, 229 S.E.2d 152 (1976); *State v. Silver,* 286 N.C. 709, 213 S.E.2d 247 (1975).

This Court has held that "[t]he admission of an incriminating statement is rendered incompetent by any circumstance indicating coercion of involuntary action. The totality of circumstances under which the statement is made should be considered when passing

on admissibility." *State v. Steptoe*, 296 N.C. 711, 716, 252 S.E.2d 707, 710 (1979) (citing *State v. Guffey*, 261 N.C. 322, 134 S.E.2d 619 (1964)).

Careful scrutiny of the circumstances in the present case leads to the conclusion that the defendant was induced to waive her constitutional rights involuntarily. The defendant had no criminal record; her prior contact with law enforcement was as a complaining witness against her husband when she had found it necessary to take out a warrant for his arrest after he stabbed her in the hand with a knife, which was but one of many acts of violence defendant had suffered as a battered spouse.

The defendant was taken into custody at about 6:45 P.M. At 10:30 P.M. when the investigators read the defendant her *Miranda* rights, she was in a state of grief, having been through an emotionally traumatic ordeal and having just minutes earlier learned of the death of her husband. The defendant was emotionally upset and wept periodically throughout the evening. According to the testimony of the defendant's daughter, Angela Torres Smith (known as "Cammie"), when she informed the defendant that Tino had died, the defendant collapsed on the floor, too upset for her daughter to be able to pick her up. Cammie went on to say that Sheriff Sheppard bent down and picked the defendant up with her and said, "Georgia, we've been friends for a long time. You're going to have to get yourself together and trust me. We have to go through this." Cammie's comment on this was, "[T]hat's what happened, and I believed him and I agreed with him also . . . [I]n other words I thought it would be best if she'd go ahead and answer his questions because he said he was a friend of hers and I trusted him so we did not worry."

Twice during the evening in police custody the defendant had looked to others around her for advice as to whether she ought to contact an attorney for assistance in dealing with her predicament. One of those she questioned was her "friend" Nelson Sheppard, the sheriff of Beaufort County, whom she had known for fifteen years. The defendant inquired of Sheriff Sheppard whether at that time she ought to have with her an attorney who would assert her rights and protect her interests. She trusted the sheriff. According to the testimony of the defendant's friend Ms. Purser, the sheriff put his hand on the defendant's shoulder and said that she did not need an attorney then; he said that it was best to

cooperate and tell the truth and reminded her that they had been friends for a long time. Sheriff Sheppard's response to Ms. Torres' inquiry was to console her, to urge her to steel herself to get through the difficulty facing her, to admonish her to tell the truth, and to advise her that an attorney was not needed at that time.

Had it not been for this circumstance of long acquaintance and trust between the sheriff and the defendant, she might have taken his response for what it was: a misplaced and unsound piece of legal advice. This advice served to prevent the defendant from maintaining the right that was hers under our Constitution: the right not to be compelled to give self-incriminating evidence. Under these conditions, the sheriff's response to the defendant's inquiry about an attorney was coercive. In my view, his response induced the defendant to waive her right to counsel and to make the confession which was used against her at trial.

I therefore hold that, within the meaning of article I, section 23 of our State Constitution, the defendant's waiver and subsequent confession were involuntarily made; thus the confession was inadmissible. Accordingly, the trial judge's conclusion of law at the *voir dire* that none of the defendant's state constitutional rights were violated by her detention, interrogation or statements is erroneous because it is not supported by competent evidence in the record.

I do not find it necessary to discuss all of the alleged sentencing errors. However, I also concur in the majority's disavowal of the trial court's error regarding the aggravating factor of "mental or physical infirmity."