STATE of Wisconsin, Plaintiff-Appellant,

v.

Bonnie J. WALKOWIAK, Defendant-Respondent-
Petitioner.

Supreme Court

*No. 92–1558–CR. Oral argument October 12, 1993.—Decided
May 13, 1994.*

(Also reported in 515 N.W.2d 863.)

For the defendant-respondent-petitioner there were briefs by *Peter L. Steinberg* and *King Street Alternative Law Office,* Madison and oral argument by *Peter L. Steinberg.*

For the plaintiff-appellant the cause was argued by *Daniel J. O'Brien,* assistant attorney general; with whom on the brief was *James E. Doyle,* attorney general.

WILLIAM A. BABLITCH, J. Bonnie J. Walkowiak (Walkowiak) seeks review of a court of appeals' decision which refused to suppress her confession. The narrow issue presented is whether the inquiry made by Walkowiak to the police, "Do you think I need an attorney?" is sufficient to invoke her right to counsel. The inquiry was made after she had been told of her *Miranda*[1] rights and signed the standardized form acknowledging them,[2] but prior to her

---

[1] *Miranda v. Arizona,* 384 U.S. 436 (1966).

[2] This form read:

confessing. Walkowiak argues that her inquiry was an invocation of her right to counsel and any admissions obtained after that inquiry were obtained in violation of her rights and should be suppressed. We disagree. We conclude that her inquiry, based on this record, is equivocal and therefore insufficient to invoke the right to counsel. The mere mention of an attorney does not trigger the right to counsel. However, upon an equivocal inquiry all interrogation must cease until the ambiguity is resolved. Although the record before us also indicates that the interrogating officer's responses were appropriate under the circumstances, the record is incomplete. Walkowiak presented no evidence at the suppression hearing inasmuch as the circuit court suppressed the confession based solely on the officer's testimony. We therefore affirm the court of appeals' unpublished decision refusing to suppress the confession and remand for further proceedings.

The facts developed in the record are as follows: Two Brown County sheriff's deputies, Sergeant Brosig (Brosig) and Lieutenant Baudhuin (Baudhuin), followed a woman, later identified as Bonnie J. Walkowiak, into the Green Bay Correctional Institu-

---

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in Court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him/her with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

tion on a tip that she was bringing drugs into the prison in balloons on her person.

Once inside the prison, the prison guard informed Brosig and Baudhuin that Walkowiak was in the bathroom. The guard then unlocked the door to the bathroom, the officers entered, observed Walkowiak pulling up her jeans, and arrested her. Brosig then noticed cash scattered on the floor and several colored balloons in the garbage can. Some of the balloons contained what Brosig believed was marijuana, and one balloon contained two white pills.

Walkowiak was transported to the Brown County sheriff's department and upon arrival, Brosig gave her a copy of a standardized rights form which lists the *Miranda* rights. Brosig read this form to Walkowiak, and she signed it.

It is difficult to determine from the record the exact chain of events at this point in the questioning. The record only contains Brosig's testimony at the preliminary examination and the motion hearing and is void of any testimony by Walkowiak. Although Brosig could not remember the exact words exchanged during questioning, he testified that sometime after Walkowiak signed the *Miranda* form she told Brosig that she had an attorney from another case and asked Brosig whether she needed an attorney. The circuit court made a finding that Walkowiak stated, "Do you think I need an attorney?" Brosig responded that he could not answer that question, and that she would have to decide for herself whether or not to get an attorney. In addition, Walkowiak expressed concern about her children, and Brosig responded that he was not able to tell her what would happen to her children since they were under the jurisdiction of a different county.

Sometime after this conversation, Brosig told Walkowiak that he could not talk to her about the incident at the prison until she signed the waiver portion of the rights form. Walkowiak signed the waiver portion of the form which stated that she read and understood her rights, that she was willing to answer questions and that she did not want an attorney at that time. She then proceeded to make inculpatory statements to Brosig. Brosig prepared a written summary of Walkowiak's statements, read it to her, and asked her to sign it. Walkowiak signed the statement.

On December 24, 1992, a criminal complaint was filed in Brown County charging Walkowiak with possession of a controlled substance with intent to deliver it to a prisoner. Walkowiak entered a not guilty plea and moved the circuit court to suppress any and all statements made at the Brown County sheriff's department claiming that she had invoked her right to counsel prior to the statements, and thus the statements were taken in violation of her *Miranda* rights. At the motion hearing, Brosig testified about the interview he conducted with Walkowiak. Upon conclusion of Brosig's testimony, Walkowiak moved to suppress based solely on Brosig's testimony and preserved her right to testify if the court did not order suppression.

The circuit court concluded that Walkowiak's inquiry, "Do you think I need an attorney?" was an invocation of her right to counsel under *State v. Lampe,* 119 Wis. 2d 206, 349 N.W.2d 677 (1984), and that questioning should have ceased immediately. Accordingly, the circuit court determined that any statements made after the invocation were obtained in violation of Walkowiak's *Miranda* rights and ordered that they be suppressed.

The court of appeals reversed. It concluded that the circuit court misconstrued the law under *Lampe,* that the statement by Walkowiak was equivocal, and that the issue whether the statement was sufficient to invoke Walkowiak's right to counsel required further fact-finding. It remanded for further evidentiary hearings. Walkowiak petitioned for review which we granted.

The question of law we decide today is very narrow. We must determine whether the inquiry, "Do you think I need an attorney?" is sufficient to invoke Walkowiak's right to counsel. We do not address whether Walkowiak's subsequent waiver of rights was voluntary, knowing, and intelligent since that question has not been decided by the circuit court.

We begin then with the fundamental precept that once an accused in custody "states that he wants an attorney, the interrogation must cease until an attorney is present," *Miranda,* 384 U.S. at 474, unless the accused validly waives his request. *Id.* at 444. This rule embodies two inquiries: whether the accused invoked his right to counsel, and if so, whether he initiated further discussion with the police and knowingly and intelligently waived his right. *Smith v. Illinois,* 469 U.S. 91, 95 (1984).

Our focus in this case is solely on the first inquiry. We must determine whether Walkowiak invoked her right to counsel when she asked Brosig, "Do you think I need an attorney?" In *Miranda,* 384 U.S. at 444–45, the Supreme Court adopted a rigid, prophylactic standard: "If . . . [an accused] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning."

The State contends that the Supreme Court narrowed this standard fifteen years later in *Edwards v.*

*Arizona,* 451 U.S. 477 (1981), when it characterized the invocation of the right to counsel as "having expressed [the] desire to deal with the police only through counsel . . ." *Id.* at 484, and "clearly assert[ing] [the] right to counsel." *Id.* at 485.

*Edwards,* however, did not resolve the issue of whether equivocal requests are sufficient to invoke the right to counsel. In *Edwards,* the accused had clearly asserted his right to counsel; the only issue remaining was whether all questioning must cease upon such a clear invocation. Accordingly, the Court fashioned a bright-line rule requiring all interrogation to cease when an accused clearly asserts his or her right to counsel.

The Supreme Court has not resolved the issue of whether equivocal requests by an accused are sufficient to invoke the accused's right to counsel. This is evinced by the Court's decision in *Smith,* 469 U.S. at 95, where in deciding whether an accused invoked his right to counsel, the Court cited both the "clearly asserted" standard in *Edwards* and the "indicates in any manner" standard in *Miranda.*

We note, however, that the Court in *Smith* recognized that some statements made by an accused in custody may be equivocal. Although the Court did not define equivocal in this context, it stated that in attempting to define equivocal, the only relevant considerations are the circumstances leading up to the request and the context of the actual request. *Id.* at 98.

Further, although the Court did not rule on the consequences of an equivocal statement, it recognized the three conflicting approaches to this question adopted by those courts that have considered the issue. *Id.* at 96.

The first approach is that used by the circuit court in this case: any request for or reference to an attorney, however equivocal or ambiguous, acts as an invocation of the right to counsel and requires all questioning to cease immediately. *See also Maglio v. Jago,* 580 F.2d 202 (6th Cir. 1978). Other courts have adopted a second approach in which they have attempted to define a threshold standard of clarity for requests. Any requests that fall below this threshold do not trigger the right to counsel. *See, e.g., People v. Krueger,* 412 N.E.2d 537, 540 (Ill. 1980), *cert. denied,* 451 U.S. 1019 (1981).

The majority of courts that have addressed this issue, however, have adopted a third approach: all questioning need not cease upon mention of the words "attorney" or "lawyer." These courts hold that when an accused makes an equivocal statement that could be construed as a request for counsel, " 'the police must cease all questioning, except that they may attempt to clarify the suspect's desire for counsel.' " *U.S. v. Fouche,* 833 F.2d 1284, 1287 (9th Cir. 1987), *cert. denied,* 486 U.S. 1017 (1988) (cite omitted). *See also Thompson v. Wainwright,* 601 F.2d 768, 771–72 (5th Cir. 1979).

■

The first issue we must resolve is whether the statement, "Do you think I need an attorney?" is equivocal in that it does not communicate a clear desire for counsel. In determining whether a question is equivocal, the reviewing court must look not only at the words used but also at the circumstances leading up to the request and the context of the actual request. If these indicate that the accused unequivocally requested counsel, then, of course, all questioning must cease immediately. *Edwards,* 451 U.S. at 484–85.

■

Based on this record, we conclude that this statement is equivocal. It appears to be nothing more than a request by Walkowiak to Brosig for advice on whether to obtain an attorney. Since Walkowiak did not testify at the suppression hearing, however, there may be facts not in the record which would dictate a contrary interpretation. It appears to reflect indecision. But regardless of whether a question or reference to an attorney reflects indecision or equivocation, the conclusion is inescapable that the suspect has uncertainty. We therefore treat such a reference or question as being, at best, equivocal.[3]

■

Having determined that Walkowiak's statement, "Do you think I need an attorney?" was equivocal, we next determine the consequences of such an ambiguous inquiry. We do so by adopting the approach utilized by the majority of courts who have addressed this issue. We hold that an equivocal question such as the one before us is insufficient to invoke the right to counsel. In doing so, we explicitly reject the per se rule adopted by some courts that the mere mention of an attorney triggers the right to counsel and requires all questioning to cease. However, that does not mean that interrogation may proceed uninterrupted. The police must cease all interrogation, except they may attempt

---

[3] The dissent states that it is in agreement with the majority opinion that the defendant's question "was an ambiguous request for an attorney." (Abrahamson, J., concurring and dissenting op. at 491). That is not our conclusion. Under no circumstances is such a question or reference a request for counsel. It is no more than an equivocal reference to an attorney which could have a myriad of meanings including nothing more than indecision.

to clarify the suspect's desire for counsel. Interrogation may not begin anew until the ambiguity is resolved. This approach recognizes that the terms "lawyer" and "attorney" do not have talismanic qualities which immediately invoke the right to counsel. Further, it ensures that only actual desires for counsel are honored by requiring law enforcement to discern the meaning of an accused's ambiguous statement regarding counsel.

Under this approach then, Brosig's response to the situation he confronted was appropriate. The record indicates that when Walkowiak made her equivocal inquiry, Brosig stopped questioning her, and simply responded that she would have to decide for herself whether or not to get an attorney. After further conversation, Brosig told Walkowiak that he could not talk to her about the incident at the prison until she signed the waiver portion of the rights form. The act of signing the waiver in conjunction with Brosig's response, resolved all ambiguity with respect to whether Walkowiak was requesting an attorney. The waiver stated that she had read and understood her rights, that she was willing to answer questions, and that she did not want a lawyer at that time.[4] The officer's response reinforced Walkowiak's right to counsel and she unequivocally waived that right, thereby clarifying any question that may have remained with respect to whether she was invoking her right to counsel. She was not.

---

[4] The waiver portion of the form read:

I have read this statement of my rights and I understand what my rights are. I am willing to answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Walkowiak contends that Brosig's response was manipulative and that the only appropriate response would have been to tell her that she did need to consult an attorney. We do not find these arguments persuasive. We find nothing in the record to indicate that Brosig attempted to coerce Walkowiak or that Brosig used Walkowiak's uncertainty about counsel or her concern for her children to manipulate her into confessing. Further, it would have been clearly inappropriate for Brosig to give Walkowiak legal advice as to whether she should or should not consult counsel. That decision is one which rested solely with Walkowiak. Thus, absent facts to the contrary, Brosig's response was consistent with the approach we adopt. Although we have no argument with Brosig's response, we recognize that there are other responses which would also have been appropriate. For example, Brosig could have simply reiterated the *Miranda* warnings, or he could have asked Walkowiak if she wanted an attorney.

Walkowiak argues that this approach is inconsistent with our previous decision in *Lampe,* 119 Wis. 2d 206, because *Lampe* requires that questioning cease upon any reference to an attorney. We disagree. In *Lampe* we held that the defendant's statements were obtained in violation of her *Miranda* rights because the defendant had clearly invoked her right to counsel and because of the egregious circumstances in that case. The defendant in *Lampe* was arrested for armed robbery and after being read her rights refused to sign a waiver and clearly demanded counsel. She was not provided counsel but was transported to the place of the crime three days later where she made her initial appearance. The public defender made a special appearance on her behalf at the initial hearing and informed her that he would appoint a local attorney for

her. At the conclusion of the initial appearance, the district attorney, outside the presence of the judge and the public defender, threatened the defendant with prosecution unless she cooperated. *Id.* at 209–10.

That same day, the district attorney and a female jail attendant initiated a one hour interview with the defendant wherein the district attorney again threatened prosecution and reminded her that she had two children about whom she should be concerned. *Id.* at 210. Near the end of this interview, the defendant asked the district attorney whether she should have a lawyer. The district attorney informed her that a lawyer would tell her not to cooperate and reminded her that if she did not cooperate with him, he would prosecute her. Again, the defendant asked for an attorney. *Id.* at 211.

At the end of the interview, despite the defendant's second request for an attorney, the district attorney asked her whether or not she would cooperate. She stated she would and proceeded to the police department where she inculpated herself. Not until the next day was she informed that, prior to the interview on the day before, an attorney had been appointed to represent her. *Id.*

These facts clearly distinguish *Lampe* from the present case. Nothing in the record before us indicates that Walkowiak ever requested counsel, that she was coerced or threatened by any law enforcement officers or that she was forced to sign a waiver form. Walkowiak was simply read her rights, told that she had to make her own decision about whether or not she wanted an attorney, and given the opportunity to sign the waiver portion of the rights form. Based on the limited record before us, we determine that her statement alone was insufficient to invoke her right to

counsel. Any language in *Lampe* to the contrary is hereby withdrawn.

Accordingly, we affirm the court of appeals and hold that the inquiry "Do you think I need an attorney?" based on this record, is equivocal and therefore insufficient to invoke the right to counsel under the Fifth and Fourteenth Amendments. We also hold that such an inquiry requires an interrogating officer to cease interrogation until the inquiry is clarified. The record before us indicates that this was done. Because the record is not fully developed, however, facts may exist which would dictate a contrary interpretation. Therefore, we remand to the circuit court for further fact-finding. On remand, the circuit court must determine, consistent with the approach we adopt, whether the facts leading up to the inquiry and the context within which the inquiry was made would render the statement an unequivocal request for counsel or Brosig's response inappropriate. In addition, the circuit court must determine the factual question of whether Walkowiak's waiver was voluntary, knowing and intelligent. Because the circuit court invoked the per se rule—that the mere mention of an attorney invoked the right to counsel—it never considered the fact that Walkowiak signed an express waiver and more importantly, the court never elicited evidence to determine that the waiver satisfied the constitutional requirements of being voluntary, knowing and intelligent. Accordingly, we remand for such a determination.

*By the Court.*—The decision of the court of appeals is affirmed and cause remanded with directions.

SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part).* I agree with the majority opinion that the defendant's question, "Do you think I need a lawyer?" was an ambiguous request for an attorney. I also agree with the majority opinion that, when a defendant makes an ambiguous comment about consulting an attorney, the police must stop all questioning.

The circuit court, adhering to our prior cases,[1] treated this *ambiguous* request as an unambiguous invocation of counsel and suppressed the confession because the questioning did not cease. Departing from our prior cases, the majority opinion adopts a "clarification rule" and concludes that an ambiguous request for counsel puts a stop to interrogation "until the ambiguity is resolved." Majority opinion at 480. Accordingly, after an ambiguous request for counsel the police may not use any statement made by a suspect unless the suspect makes clear that an attorney is not wanted.

I write separately to make three points. First, I do not agree with the majority's conclusion that the defendant's ambiguous request for counsel was clarified in

---

[1] *See, e.g., Micale v. State,* 76 Wis. 2d 370, 373, 251 N.W.2d 458 (1976) (questioning had to stop after defendant stated that he "couldn't afford an attorney"); *Wentela v. State,* 95 Wis. 2d 283, 292 (1980) (questioning had to stop after defendant said either "I think I need an attorney" or "I think I should see an attorney"); *State v. Lampe,* 119 Wis. 2d 206, 217, 349 N.W.2d 677 (1983) ("It is apparent that, in the face of the direct question, 'Do you think I ought to have an attorney,' the *Miranda* rule should have triggered an immediate cessation of the conversation even had there not been previous requests for a lawyer"); *State v. Kunkel,* 137 Wis. 2d 172, 182, 404 N.W.2d 69 (Ct. App. 1986) (defendant's statement that he could not afford counsel amounted to invocation of his right to counsel).

this case. Rather, I would propose a single approach for law enforcement officers to take when a suspect makes an ambiguous request for counsel. Second, I conclude that this court needs to explain how law enforcement officers and courts can identify an ambiguous request for counsel. Third, I reject the bright line rule that an ambiguous statement about counsel should be treated in all respects as an invocation of the right to counsel.

## I.

I disagree with the majority's conclusion that the defendant's ambiguous request for counsel was clarified in this case. What needed to be clarified was whether the defendant wanted an attorney. The police officer's response to the defendant, that the decision to have an attorney was hers, was correct but it did not illuminate her intent with respect to counsel. Clarification must come from the suspect.

The majority opinion remedies this deficiency by holding that the interrogator's non-committal response to the defendant's question, coupled with her act of signing the waiver form, "resolved all ambiguity with respect to whether [she] was requesting an attorney." Majority opinion at 487.

I conclude that merely signing the waiver form did not clarify the defendant's wishes with respect to an attorney. My reasoning is as follows: If the defendant had expressly invoked her right to counsel, the officer could not have asked her to sign a waiver form; questioning could have continued only at her initiative. *Edwards v. Arizona,* 451 U.S. 477, 484 (1981). The Supreme Court has referred to *Edwards* as establishing a "rigid prophylactic rule." *Smith v. Illinois,* 469 U.S. 91, 95 (1984). The United States Supreme Court adopted this prophylactic rule because "the presump-

tion raised by a suspect's request for counsel [is] that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance...." *Arizona v. Roberson,* 486 U.S. 675, 683 (1988). The rule in *Miranda* was based on the Court's awareness "that the lawyer occupies a critical position in our legal system because of his [or her] unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation...." *Fare v. Michael C.,* 442 U.S. 707, 719 (1979).

In this case, however, the defendant's ambiguous comment about consulting an attorney fell short of an express invocation of the right to counsel. When a suspect, as here, appears unsure about asserting her right to counsel or is not clear whether she is asserting her right to counsel, her confidence in her own ability to undergo custodial interrogation without counsel is in doubt. Because the right to counsel is so fundamental, an ambiguous assertion of the right to counsel should, until proven otherwise, be interpreted as a possible invocation of that right. (The majority's requirement that all questioning cease shows implicit agreement with this position.)[2] Here the defendant's possible intent to invoke the right to counsel, combined with the principles of *Miranda, Edwards* and their progeny, lead to the conclusion that the officer should not have asked the suspect to sign the waiver form. Only an express statement that she did not want an attorney could have enabled him to do so. Since the defendant

---

[2] One commentator interprets the "clarification cases" as creating a presumption that an equivocal reference to counsel is an invocation of the right to counsel. Charles R. Shreffler, Jr., *Judicial Approaches to the Ambiguous Request for Counsel Since Miranda v. Arizona,* 62 Notre Dame Lawyer 460, 472 (1987).

made no such statement, her waiver is invalid as a matter of law. *Minnick v. Mississippi,* 111 S. Ct. 486 (1990); *Arizona v. Roberson,* 486 U.S. 675 (1988); *Edwards v. Arizona,* 451 U.S. 477 (1981).[3]

If, as I have concluded, a request that a suspect sign a waiver form is not a valid clarification of the suspect's wishes with respect to counsel, law enforcement officers may rightly ask how they should proceed to clarify her wishes.

I conclude that, in the face of an ambiguous request for counsel, the police must first, as the majority requires, cease questioning the suspect about the crime. After responding to a question in a neutral manner, as was done here, the police must then directly focus on determining whether the suspect is invoking the right to counsel. In other words, the police must inform the suspect of the consequences of the ambiguous statement and ask the suspect to decide whether to assert the right to counsel. I would suggest that the officer administer a warning to such a suspect, substantially as follows:

"I have to stop questioning you now because I am not sure whether you want a lawyer. You have a right to consult with a lawyer and to have the lawyer present during questioning.[4] If you cannot afford a lawyer, one will be appointed to represent you.[5] You will not be punished for deciding not to speak with me now, and

---

[3] For a summary of this argument although the words used are different, *see* Judge Langhoff's decision quoted in my separate opinion in *State v. Thiel,* 183 Wis. 2d 505, 545, 515 N.W.2d 847 (1994).

[4] *Miranda v. Arizona,* 384 U.S. 436, 469–472 (1966).

[5] *Miranda v. Arizona,* 384 U.S. 436, 473 (1966).

you will not be rewarded for talking with me now.[6] If you talk with me now, anything you say can be used against you in court.[7] Do you want a lawyer?"

If, after hearing this warning, the suspect unambiguously requests counsel, the questioning must stop, unless and until it is reinitiated by the suspect. If, on the other hand, the suspect unambiguously agrees to questioning without counsel, the questioning can continue.

If, after hearing the warning, the suspect does not respond or continues to vacillate, the questioning must stop. The suspect should not be subjected to repeated requests to decide about counsel. Insistent police efforts imply a lack of respect for the individual's need for time to decide and could be viewed as placing improper pressure on the suspect.

I recognize that no one can foresee the great variety of fact patterns that are likely to unfold in custodial interrogations across Wisconsin. Individual suspects will demonstrate different levels of comprehension and clarity. Courts have not attempted to suggest that law enforcement officers adopt a single approach in these situations, but I have found that my suggested language could have been used effectively in diverse situations presented in numerous cases. Moreover, the language I suggest can be modified to fit individual situations as long as the modification comports with the goals to be accomplished: Tell the suspect the consequences of the ambiguous reference to consulting an

---

[6] This language is substantially the same as that contained in the waiver form signed by the suspect in this case. The waiver form reads in part: "No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

[7] *Miranda v. Arizona,* 384 U.S. 436, 469 (1966).

attorney (questioning stops); give the warnings about the right to counsel during interrogation; ask the suspect whether an attorney is wanted.

On the surface, the approach I suggest may appear similar to the options suggested by the majority.[8] However, I believe my approach is meaningfully different.

First, unlike the majority, I offer law enforcement officers a single, simple approach to clarifying a suspect's wishes with respect to an attorney. Second, having a police officer advise the suspect specifically about the consequences of the suspect's ambiguous reference to a lawyer and the suspect's right to counsel acknowledges the uncertain character of the suspect's statement and gives the suspect an opportunity to make a decision. A waiver form simply ignores the ambiguous comment. The waiver form would have been used in interrogation even if a suspect made no reference to a lawyer. In contrast, a warning of the type I suggest focuses on the suspect's reference to an attorney.[9] Third, asking the police to give this warning

---

[8] One option the majority provides is that the police simply ask the suspect whether he or she wants a lawyer. I believe that the only appropriate method of clarification and the only question that can be asked at this point would be "Do you want the assistance of a lawyer at this time?" *See also* Rhonda Y. Cline, *Equivocal Requests for Counsel: A Balance of Competing Policy considerations,* 55 U. Cinn. L. Rev. 767, 781–782 (1987). The warnings preceding this question (which I have set forth) focus the suspect's attention on the right to counsel and assist in assuring the validity of any subsequent waiver.

[9] The majority also suggests that a clarification would be accomplished through repeated *Miranda* warnings. *Miranda* warnings alone do not, in my opinion, clarify the suspect's intent and have the same pitfalls as the waiver. Law enforcement officers often give repeated *Miranda* warnings even when

orally counteracts some of the pressures inherent in custodial interrogation.

Although my approach is different, it does not introduce any new concepts into the interrogation process. The language I suggest builds on both the *Miranda* warnings and the waiver form that is generally used, as it was in this case. Majority opinion at 487.

The approach has several advantages. It informs the police exactly how to respond to a suspect who ambiguously asserts the right to counsel and assists law enforcement officers in assuring that any subsequent waiver was voluntarily, intelligently and knowingly made.

It also takes into account the nature and circumstances of custodial interrogation upon which *Miranda* is premised. The *Miranda* Court acknowledged that custodial interrogation is *inherently* coercive. Indeed, custodial interrogation is designed to enhance the authority and trustworthiness of the interrogator in an effort to erode the suspect's will to resist.[10] It is not surprising, then, that the defendant in the case at bar apparently *asked* her interrogator if *he* thought she needed a lawyer. Like *Miranda* and its progeny, my approach attempts to give suspects a fair opportunity to protect their own rights.

In addition, the approach I suggest helps ease the conflict of interest posed to the officer by an ambiguous request for counsel. The interrogating officer wants the

---

the suspect does not make an ambiguous comment about an attorney.

[10] Inbau, Reid & Buckley, Criminal Interrogations and Confessions (1986), chapters 3, 4, 6, 8 and the appendix. This is the third edition of one of the police interrogation manuals discussed in the *Miranda* opinion.

497

interrogation to proceed without counsel present. *See, e.g., State v. Hanson,* 136 Wis. 2d 195, 401 N.W.2d 771 (1987). It is not in the officer's interest for the suspect to consult an attorney, who in all probability will advise the suspect not to speak with the police unless the attorney is present. By explaining clearly how the police are to proceed when a suspect appears uncertain about invoking the right to counsel, the conflict of interest is alleviated.

Finally, this approach would maintain *Miranda's* balance between the needs of law enforcement and the rights of the individual. As the United States Supreme Court recently observed, "[b]oth waiver of rights and admission of guilt are consistent with the affirmation of individual responsibility that is a principle of the criminal justice system. It does not detract from this principle, however, to insist that neither admissions nor waivers are effective unless there are both particular and systematic assurances that the coercive pressures of custody were not the inducing cause." *Minnick v. Mississippi,* 498 U.S. 146, 155, 111 S. Ct. 486, 492 (1990).

## II.

The majority fails to explain how law enforcement officers and courts can recognize an ambiguous request for counsel. This case clearly demonstrates why such an explanation is necessary.

The state's first line of argument in this case is that the defendant "did not even make an ambiguous or equivocal request for counsel." State's Brief, p. 27; *see also* State's Brief, p. 36. According to the state, the defendant merely made an inquiry. Yet the majority opinion assumes, without discussion, that the defen-

dant's statement was an ambiguous request for counsel.[11]

As the majority opinion explains, the officer was unable to remember the defendant's exact language. However, even if the defendant asked the officer whether he thought she needed a lawyer in those very words, courts across the country are divided over whether that particular question amounts to an unequivocal request for counsel, an ambiguous request for counsel, or no request for counsel at all.[12] If the defen-

[11] The majority acknowledges, however, that if the defendant testifies in the suppression hearing on remand, facts may be found that would render the statement an unequivocal request for counsel or render the police officer's response inappropriate. Majority opinion at 490.

[12] The case law suggests three possible interpretations of a request for a police officer's opinion as to whether counsel is needed. Some courts have viewed such a question as equivocal. *See e.g., Russell v. State,* 727 S.W.2d 573 (Tex. Crim. App. 1987), *cert. denied,* 484 U.S. 856 (1987) (defendant's question as to whether interrogators thought the presence of an attorney was necessary held to be equivocal but subsequently properly clarified). Other courts have not seen such a question as an equivocal request for counsel. *See e.g., Norman v. Durcharme,* 871 F.2d 1483 (9th Cir. 1989) (defendant asked police if they thought he should get a lawyer; the officer gave no advice in response; the court held that the suspect's question did not rise to the level of even an equivocal request for counsel). Other courts have held that the question "do you think I need a lawyer" amounts to an unequivocal request for counsel. *See e.g., State v. Doughty,* 456 N.W.2d 445 (Minn. App. 1990), *rev'd on other grounds,* 472 N.W.2d 299 (1991). For discussion of cases interpreting these various statements, *see also,* Cheryl M. Bailey and Jay M. Zitter, Annotation, *What Constitutes Assertion of Right to Counsel Following Miranda Warnings—State Cases,* 83 A.L.R. 4th 443 (1991).

dant had in fact used a slightly different phrase, such as "Maybe I need a lawyer" or "I think I might need a lawyer," courts again have differed as to what type of request for counsel, if any, these remarks constitute.[13] However, although it may be difficult to draw functional distinctions among these phrases, it is clear from each of them that the thought of having a lawyer has crossed the suspect's mind.

I conclude, as other courts have concluded, that when a suspect fails to assert unambiguously the right to counsel, but nonetheless makes a statement or asks a question that evinces a possible desire to exercise

---

For another approach to interpreting a suspect's statements, *see* James J. Tomkovicz, *Standards for Invocation and Waiver of Counsel in Confession Contexts*, 71 Iowa L. Rev. 975, 1004–20 (1986).

[13] For a discussion of cases covering these possibilities, *see* Cheryl M. Bailey and Jay M. Zitter, *What Constitutes Assertion of Right to Counsel Following Miranda Warnings—State Cases*, 83 A.L.R. 4th 443 (1991). Among the permutations of requests for counsel that could be deemed ambiguous are the following: "Do you think I need a lawyer?"; "Should I have my lawyer?"; "Is it better for me to speak to my lawyer before I speak to you or speak to him and you together or whatever?"; "Maybe I should talk to my attorney"; "I think I need an attorney"; "I might need a lawyer"; "I might better talk to my lawyer before I give a statement"; "I think I might need an attorney"; "I feel like I ought to have an attorney around"; "I guess I'll need an attorney"; "I don't know whether I should have an attorney here or what."

It should be noted that the United States Supreme Court has evidently concluded that the response: "Maybe I should have an attorney," constitutes an ambiguous request for counsel. *See* "question presented" by *Davis v. United States,* pending in the United States Supreme Court, No. 92–1949.

that right,[14] the suspect has made an ambiguous request for counsel.

Law enforcement officers and the court are required "to give a broad rather than a narrow interpretation to a defendant's request for counsel." *Michigan v. Jackson,* 475 U.S. 625, 633 (1986). A generous construction of what constitutes an ambiguous reference to counsel recognizes the fact that ordinary citizens do not choose their words with lawyer-like precision and ensures that the right to counsel is equally available to all citizens. Modern scholarship in the field of linguistics demonstrates that not all people express themselves using direct and unqualified language; in everyday speech many of us tend to soften direct assertions. Empirical research on patterns of speech suggests that the dynamics of custodial interrogation accentuate the tendency of women, minorities, and people from lower socioeconomic groups to equivocate or use less assertive forms of communication.[15] According to this research, the greater the imbalance of power in the conversation, the greater is the tendency of the less powerful speaker to equivocate, reply with an

[14] *See, eg., United States v. March,* 999 F.2d 456, 461 (10th Cir. 1993) ("proper focus is on whether a defendant's statement evinces a contemplation of exercising the right to have an attorney present, or merely seeks clarification of what his or her rights are"); *Towne v. Dugger,* 899 F.2d 1104, 1109 (11th Cir. 1990) *cert. denied,* 498 U.S. 991 (1990) (a statement is ambiguous when it is "either in the form of an assertion or a question communicating a possible desire to exercise [the] right to have an attorney present during questioning").

[15] *See, e.g.,* Janet E. Ainsworth, *In a Different Register: The Pragmatics of Powerlessness in Police Interrogation,* 103 Yale L.J. 259 (1993).

interrogative, or use other non-assertive language.[16] Assertive people should not be accorded a higher level of constitutional protection than people who speak in a less direct, less confident manner. Although the suspect has the burden of making his or her wishes about counsel known, that burden must be viewed in light of the pressures created by a custodial setting and in light of the fact that not all suspects can clearly articulate their wishes.

## III.

In pondering this case, I initially favored a bright line rule prohibiting any and all conversation between an interrogating officer and a suspect once the suspect had made a statement or asked a question appearing to contemplate invocation of the right to counsel. Questioning would resume only at the suspect's request. This bright line rule would, I thought, follow *Miranda*'s command that if a suspect indicated "in any manner and at any stage of the process that he [wished] to consult with an attorney before speaking there [could] be no questioning." *Miranda*, 384 U.S. 436, 444–445 (1966). It would avoid the litigation that is bound to be encouraged by the majority's approach to clarification and would avoid the danger of interpreting unambigu-

---

[16] Janet E. Ainsworth, *In a Different Register*, 103 Yale L.J. 259, 287 (1993). *See also People v. Randall*, 464 P.2d 114, 118 (Cal. 1970), *overruled on other grounds, People v. Cahill*, 853 P.2d 1037 (Cal. 1993) ("To strictly limit the manner in which a suspect may assert the privilege, or to demand that it be invoked with unmistakable clarity. . .would subvert *Miranda*'s prophylactic intent. Moreover, it would benefit if anyone, only the experienced criminal who, while most adept at learning effective means of coping with the police, is least likely to find incarceration and police interrogation unnerving.").

ous invocations of counsel as ambiguous. And it would accord people who speak in less than a clear manner the same protection afforded to the assertive. This approach has merit. I worry that reliance on ambiguity and clarification puts courts on the proverbial slippery slope.

On reflection, however, I became concerned that it may be unrealistic to expect all communication between the interrogating officer and the suspect to stop upon a suspect's ambiguous assertion of the right to counsel. Indeed, unlike the clearly assertive suspect, the equivocal suspect might not want counsel and might not understand why the officer was ending the interrogation precipitously. If anything, abruptly ending the interrogation without explanation might frighten a suspect, arousing concern that the police officer was angry, and thus increasing the coerciveness of the situation. This result would defeat the purposes of *Miranda*. Equally important, it is claimed that a bright line rule would not adequately preserve *Miranda*'s balance between the needs of law enforcement and the right of the individual to decide whether to exercise a constitutional right.

Abandoning the bright line rule but finding the majority solution wanting, I now conclude that the officer should advise the suspect of the consequences of the ambiguous request, specifically restate the right to counsel, and explicitly ask the suspect to state whether the suspect wants a lawyer.

"Do you think I need an attorney?" the defendant asked. Everyone but the defendant who is being asked to waive fundamental constitutional rights knows the answer to her question. The honest and correct answer is, without doubt, yes. The police officer cannot, however, be called upon to give the suspect legal advice.

But *Miranda* requires that suspects be given a fair opportunity to exercise their constitutional right to counsel. I believe my approach provides interrogating officers with a simple and clear method to follow while protecting the precious constitutionally guaranteed rights of individuals.

For the reasons set forth, I write separately.