STATE of Wisconsin, Plaintiff-Respondent,

v.

Orville C. LONG, Defendant-Appellant.†

Court of Appeals

*Nos. 93–3402–CR, 93–3403–CR. Submitted on briefs October 6, 1994.—Decided December 22, 1994.*

(Also reported in 526 N.W.2d 826.)

†Petition to review dismissed.

For the defendant-appellant the cause was submitted on the briefs of *Patrick J. Stangl* of *Stangl Law Office* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   Orville C. Long appeals from a judgment convicting him of one count of second-degree

sexual assault of a child, contrary to § 948.02(2), STATS. Long contends that the trial court erred in not suppressing statements he made during a custodial interrogation because the police questioned him after he invoked his *Miranda* right to consult with counsel. *See Miranda v. Arizona*, 384 U.S. 436, 467-74 (1966). We conclude, however, that because Long's request for counsel was ambiguous, the police were under no obligation to cease the interrogation. Consequently, we affirm.

Long also appeals from a second judgment convicting him of one count of first-degree sexual assault of a child, contrary to § 948.02(1), STATS. Long contends that because he was interrogated without counsel's presence and had already been charged with this offense, his Sixth Amendment right to counsel was violated. We conclude that the trial court *did* suppress statements pertaining to this charge, and that Long's assertions of error are moot. Consequently, we affirm.

## BACKGROUND

Orville C. Long appeared in court on March 31, 1992, and was charged with one count of first-degree sexual assault of a child. He was subsequently released on bail. Counsel filed a notice of retainer on April 14, 1992, and contacted the Sun Prairie Police Department to inform them that the police should not question Long on other matters without his being present.

On April 23, 1992, Sun Prairie Police Department Investigator David Dickmann arrested Long at work after receiving information that Long had sexually assaulted two other children. Dickmann knew that Long had already been charged with first-degree sexual assault of a child in another case, and that Long's counsel did not want him questioned without his being

present. Nevertheless, Dickmann questioned Long during which time Long made inculpatory statements about the first-degree sexual assault with which he had already been charged and the offenses in which he was a suspect. Long was subsequently charged in a separate case with two counts of second-degree sexual assault of a child.

Before trial, Long moved to suppress all statements he made during the interrogation. At a pretrial evidentiary hearing, Dickmann testified that he told Long what he was being arrested for and brought him to the police department for questioning. Dickmann testified that Long stated before the interrogation began that "[m]y attorney told me I shouldn't talk unless he is here." Dickmann attempted to clarify this statement by asking Long if he was invoking his right to counsel. Long replied that he would answer questions without his counsel being present, but that he would choose which ones to answer. Dickmann read Long his *Miranda* rights and Long said he understood those rights but agreed to answer some questions.

Dickmann questioned Long for about forty-five minutes. Dickmann testified that Long never asked for his attorney at any time during the interrogation and that he answered all of Dickmann's questions. Dickmann denied stating, "I'm not about to bandy words with any attorney," in response to Long's reference to his attorney.

Long's version of the events differ. Long testified that when he was brought to the police department for questioning he stated, "I'd like to have my attorney here." Long asserted that Dickmann replied, "[I don't] want to bandy words with another attorney. Now, let's talk." Long stated that Dickmann then proceeded to question him and while he thought he had the right to

call his attorney, he nonetheless answered Dickmann's questions because he did not know what else to do. Long admitted that he never renewed his request for his attorney because of Dickmann's suggestion that it would be better if Long told him everything he knew.

Detective Robert Berndt, who was present during the entire interrogation, corroborated Dickmann's testimony as to the statements made during the interrogation.

After the evidentiary hearing, the State filed a brief in which it conceded that the statements Long made with regard to the first-degree sexual assault charge should be suppressed because they were made in violation of Long's Sixth Amendment rights. However, it argued, with regard to the new offenses, that because Long had not made a clear request for counsel, Long's *Miranda* rights under the Fifth Amendment were not violated, and that because he had not yet been formally charged with those offenses, his Sixth Amendment right to counsel had not yet attached.

The trial court found that the testimony of the police officers was credible and that Long's testimony was not. The trial court adopted the police officers' version of the statements made during the interrogation. It also adopted the State's legal analysis with regard to Long's Fifth and Sixth Amendment rights and found that Long understood his *Miranda* rights and freely and voluntarily chose to respond to police questions regardless of his attorney's advice. Therefore, Dickmann's questioning was proper and the statements made about the charges in which he was a suspect would not be suppressed. Long entered a no contest plea to the one charge of first-degree sexual assault of a child and to one of the second-degree sexual assault of a child charges. Long appeals.

## STANDARD OF REVIEW

A trial court's findings regarding the historical facts surrounding a defendant's detention will not be overturned unless they are clearly erroneous. Section 805.17(2), STATS. Nonetheless, we independently review the constitutional facts surrounding the issue of whether the police officers violated Long's *Miranda* rights. *State v. Kramar*, 149 Wis. 2d 767, 784, 440 N.W.2d 317, 324 (1989). Due regard is given to the opportunity of the trial court to judge the credibility of witnesses. Section 805.17(2); *State v. Hurd*, 135 Wis. 2d 266, 278, 400 N.W.2d 42, 48 (Ct. App. 1986).

## AMBIGUOUS REQUESTS FOR COUNSEL

Long contends that the trial court erred when it denied his motion to suppress statements he made during a custodial interrogation concerning the offenses in which he was a suspect. According to Long, he made a clear request for counsel at the beginning of the interrogation and therefore any questioning that occurred thereafter was done so in violation of his *Miranda* rights. We disagree.

The Sixth Amendment right to counsel does not attach until the initiation of adversarial judicial proceedings and is offense specific. *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). Thus, until a suspect is formally charged, he or she has no Sixth Amendment right to have counsel present. However, in *Miranda*, 384 U.S. at 467-74, the Supreme Court held that a suspect has the right to confer with counsel and to have counsel present during a custodial interrogation. The Court determined that this right is "indispensable to

the protection of the Fifth Amendment privilege [against self-incrimination] . . . ." *Id.* at 469. Furthermore, the police are obligated to explain this right to the suspect and obtain a waiver before questioning begins. *Id.* at 469-70. The Court explained: "If . . . [a suspect] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.* at 444-45. Any statements obtained in violation of this rule are not admissible against the defendant. *Id.* at 444.

Later, the Supreme Court added a second layer of protection to the *Miranda* right to counsel in *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), by fashioning a bright-line rule requiring law enforcement officers to immediately cease all questioning when a suspect clearly asserts his or her right to counsel during a custodial interrogation. *Edwards*, however, did not resolve the issue of whether ambiguous statements or equivocal requests are sufficient to invoke the right to consult with counsel established under *Miranda* and whether police officers are obligated to clarify an equivocal request.

The Supreme Court resolved this issue in *Davis v. United States*, 512 U.S. —, 114 S. Ct. 2350 (1994). In *Davis*, the defendant was advised that he was a suspect in a killing and warned of his *Miranda* rights to remain silent and to have counsel present during the custodial interrogation. The defendant waived these rights both orally and in writing, but more than one hour into the interrogation the defendant said, "Maybe I should talk to a lawyer." When the interviewing agents attempted to clarify the statement, the defendant responded by saying, "No, I'm not asking for a lawyer," and continued

on by saying, "No, I don't want a lawyer." After the defendant was reminded of his rights to remain silent and to counsel, the interrogation continued for another hour until the defendant said, "I think I want a lawyer before I say anything else," at which point the questioning ceased. *Id.* at —, 114 S. Ct. at 2353.

The Supreme Court held that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* at —, 114 S. Ct. at 2355 (emphasis added). The Court stated "[a]lthough a suspect need not 'speak with the discrimination of an Oxford don,'" *id.* (quoting Souter, J., concurring in judgment, *id.* at —, 114 S. Ct. at 2364), the request for counsel must be made "sufficiently clearly [so] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect." *Id.*

In announcing this rule, the Court declined to adopt one that would compel officers to ask clarifying questions when faced with an ambiguous request for counsel.[1] *Id.* The Court explained that while doing so

---

[1] In *State v. Walkowiak*, 183 Wis. 2d 478, 486-87, 515 N.W.2d 863, 867 (1994), the Wisconsin Supreme Court, relying on federal case law, ruled that when a suspect is undergoing custodial interrogation and makes an ambiguous request for counsel, all questioning must cease until the police first clarify whether the defendant is making a request for counsel. However, *Walkowiak* was decided one month before *Davis*. While we are normally bound by Wisconsin Supreme Court precedent, "we may deviate from [such] . . . precedent when that precedent

might be good police practice, it "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity." *Id.* at —, 114 S. Ct. at 2355-56 (quoting *Michigan v. Mosley*, 423 U.S. 96, 102 (1975)). The Court reasoned that terminating an interrogation until an equivocal request for counsel is clarified would "needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present." *Id.* at —, 114 S. Ct. at 2356.

The Court also recognized that requiring a clear request for counsel might disadvantage those suspects who, for a variety of reasons, do not make their wishes known with a great deal of certainty. *Id.* Yet the Court reasoned that it was the suspect's comprehension of the *Miranda* warnings themselves, which allow a suspect to remain silent or request counsel, that provide the greatest protection to an accused. *Id.* The Court also explained that the rule is justified because if police officers were required to cease questioning upon an equivocal reference to an attorney, they would be forced to make judgment calls regarding whether the suspect truly desires an attorney and ultimately face the threat of suppression if they guessed incorrectly.[2] *Id.*

is based on an interpretation of federal law that is no longer in accord with subsequent decisions by the United States Supreme Court." *State v. Whitaker*, 167 Wis. 2d 247, 261, 481 N.W.2d 649, 655 (Ct. App. 1992).

[2] Justice Souter, with whom Justice Blackmun, Justice Stevens, and Justice Ginsburg joined, concurred that ambiguous statements for counsel do not require an end to all questioning. However, they do not agree with the conclusion reached by the majority that interrogators have no legal obligation to clarify a suspect's ambiguous reference to counsel that could have been

Based upon the record, we conclude that Long's statement was equivocal. A statement is equivocal when, in light of the circumstances, a reasonable police officer understands only that the suspect might be invoking the right to have counsel present. Dickmann's and Berndt's testimony, which the trial court found credible, that Long stated, "My attorney told me I shouldn't talk unless he is here," was not a clear assertion of *his* desire to have counsel present. Rather, it was an indication of what Long's attorney told him not to do. Moreover, after he made this statement, he responded to Dickmann's attempt to clarify the request by stating that he would agree to answer some of the police officer's questions. A reasonable police officer could have understood only that Long *might* be invoking his right to counsel. His statement reflected indecision and uncertainty and was not an invocation of his right to consult with counsel during a custodial interrogation pursuant to *Miranda*. Consequently, we affirm the trial court's decision refusing to suppress the inculpatory statements.[3]

## SUFFICIENT FACTUAL FINDINGS

Long also contends that the trial court erroneously exercised its discretion because it failed to articulate sufficient factual findings to support its legal conclu-

reasonably understood to be an expression of desire for counsel. *Davis*, 512 U.S. at —, 114 S. Ct. at 2359.

[3] We do not decide whether article I, § 8(1) of the Wisconsin Constitution, which protects against self-incrimination, affords greater protection and requires that the police clarify ambiguous requests for counsel and thus the matter is reserved for another day. *See, e.g., State v. Hoey*, 881 P.2d 504, 523-24 (Haw. 1994).

sions. In so doing, Long cites no legal support for his argument. Contrary to Long's assertions, the trial court did articulate factual findings sufficient to support its legal conclusions that the statements should not be suppressed. The trial court expressly found that the police officers' testimony of the statements made by Long in reference to his attorney was the credible version. The trial court also found that Long's testimony in this regard was not credible. Consequently, implicit in its denial of Long's motion to suppress was the conclusion that Long had not made a clear request for counsel that would have required Dickmann's questioning to cease.

That the trial court's decision was short does not mean that its legal conclusions were incorrect. Even when a trial court fails to make express findings of fact necessary to support its legal conclusions, we assume that the trial court made such findings in the way that supports its decision. *State v. Echols*, 175 Wis. 2d 653, 673, 499 N.W.2d 631, 636, *cert. denied*, 114 S. Ct. 246 (1993). The trial court could have only denied the suppression motion if it believed the police officers' version of the interrogation was more credible than Long's. *Id.*, 499 N.W.2d at 637. The trial court stated that it did so. Consequently, the trial court did not erroneously exercise its discretion when it denied Long's suppression motion.

## LONG'S SIXTH AMENDMENT RIGHTS

Long also appeals from a judgment convicting him of first-degree sexual assault of a child. This judgment was entered pursuant to Long's no contest plea. Long contends that he entered this plea because the trial court refused to suppress statements he made during

questioning with regard to this charge even though adversarial proceedings had already commenced and his Sixth Amendment right to counsel had attached.

The Sixth Amendment right to counsel attaches upon the initiation of adversarial judicial proceedings and is offense specific. *McNeil*, 501 U.S. at 175. Long is mistaken when he asserts that the trial court refused to suppress statements he made about the charge of first-degree sexual assault. The trial court's decision refusing to suppress statements made during the police interrogation concerned only those statements made with regard to the charges in which Long was merely a suspect and not the one in which he had already appeared in court. The trial court adopted the State's analysis with regard to Long's Fifth and Sixth Amendment rights. The State conceded that Long's Sixth Amendment rights were violated as to statements made with regard to this offense. We conclude the trial court suppressed those statements. Long's assertions about them are moot. We therefore affirm his judgment of conviction.[4]

*By the Court.*—Judgments affirmed.

---

[4] Long also asserts that we should reverse this conviction because he entered a no contest plea with the mistaken belief that the trial court did not suppress his statements. To reverse on this ground, Long must first move the trial court to withdraw his plea because his plea was not entered voluntarily and knowingly.