STATE of Wisconsin, Plaintiff-Respondent,

v.

Humberto LAGAR, Defendant-Appellant.†

Court of Appeals

*No. 94–0574–CR. Submitted on briefs November 2, 1994.—Decided December 28, 1994.*

(Also reported in 526 N.W.2d 836.)

† Petition to review denied.

425

On behalf of the defendant-appellant, the cause was submitted on the briefs *Ellen Henak*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J.   Humberto Lagar appeals from his conviction for burglary. Lagar argues that the investigating officer did not scrupulously honor his request for counsel and that the trial court erred in refusing his request for the *falsus in uno* jury instruction. We conclude that Lagar's request for counsel did not preclude the investigating officer from asking questions in an attempt to fulfill Lagar's request for counsel. Further, the trial court properly exercised its discretion in refusing the requested jury instruction. Therefore, we affirm.

Lagar was taken into custody by police officers investigating a residential burglary which was interrupted when the homeowners returned to their home. As the homeowners entered the driveway, they observed a strange car backed up to the house and several men in the area. The homeowners took quick action to prevent the men from leaving in the car, and after the men drove their car into a tree they fled the scene on foot.

427

Two of the men, Juan Silva and Alfredo Rivera, were found hiding in a field near a gas station. A private citizen found Lagar in the men's room of the gas station and escorted him to investigator Lisa Seils. Lagar was dressed in dark clothing and the mud on his pants and shoes led Seils to conclude that he was a suspect in the burglary. Seils took Lagar into custody, patted him down and placed him in the rear seat of her squad car.

Immediately after Seils gave Lagar his *Miranda* rights, he said he wanted his attorney. She asked the name of the attorney and Lagar responded that his name was Oscar Perez. Lagar then volunteered that Perez was not an attorney. Lagar said Perez was a police officer working with the Milwaukee gang unit. He continued by saying that he would cooperate with Seils because he was working with Perez. Seils then asked Lagar if he wanted to talk to Perez or talk to an attorney; she understood Lagar to reply that he wanted Perez.

After this exchange, Seils continued to question Lagar in the squad car and at the police station. Before interrogating Lagar at the police station, she gave him a written copy of the *Miranda* rights and Lagar signed a waiver of those rights. Lagar then gave a written statement implicating himself and three others, Silva, Rivera and Manuel Ayala, in the aborted burglary. Lagar was subsequently charged with one count of burglary while armed, § 943.10(1)(a) and (2)(a), STATS., and one count of recklessly endangering safety, § 941.30(2), STATS.

Lagar filed a motion to suppress his statement, claiming that he invoked his right to counsel and his rights were violated when Seils continued questioning him. A *Miranda/Goodchild* hearing was conducted

immediately prior to the trial, and the trial court denied Lagar's motion. In its bench decision the trial court found that after saying that he wanted an attorney, Lagar volunteered that the person he wanted was Perez, who was not an attorney, and this constituted an equivocation of the right to counsel. The trial court concluded that the investigating officer's continued questioning did not constitute a violation of Lagar's right to counsel.

During the trial, Seils testified that after "Mirandizing" Lagar, he *immediately* asked to speak to Perez. Defense counsel objected on the grounds that the officer's testimony was inconsistent with her testimony during the *Miranda/Goodchild* hearing. The trial court ordered a transcript of the hearing and agreed that defense counsel could cross-examine the officer on any inconsistencies.

During redirect examination, the assistant district attorney asked Seils if any fingerprints were found at the scene of the burglary and Seils said no. When asked if fingerprints work like they do on television, Seils responded that they do not, that in eighty-nine percent of the cases no prints would be found. When questioned about the source of this figure, Seils admitted she made the number up because it sounded good. Defense counsel then asked the officer to be more specific, and she replied that the figure came from her seven years of experience as an evidence technician.

Lagar's three accomplices testified at the trial. The only thing all three could agree upon was that after using LSD and drinking beer, they decided to burglarize a house off of I-94. Their testimony was inconsistent about the details of the aborted burglary, who was driving, who entered the house and who left the house.

429

The jury acquitted Lagar of armed burglary but found him guilty of the lesser included offense of party to the crime of burglary, § 943.10(1)(a), STATS.; the jury also acquitted him of the recklessly endangering safety charge. The court imposed and stayed a seven-year prison term. Lagar appeals from the judgment of conviction.

Lagar challenges the trial court's decision not to suppress his statement to Seils. He argues that once he made an unequivocal demand for counsel, the officer was required to immediately stop any questioning. He claims Seils's questions about who Lagar's attorney was exceeded the directive from *Smith v. Illinois*, 469 U.S. 91 (1984), that all questioning must cease once an accused invokes the right to counsel. Lagar also asserts that the trial court erred in refusing to give the *falsus in uno* instruction. He claims that Seils's testimony and the testimony of his three accomplices were willfully false and necessitated the *falsus in uno* instruction.

In review of the trial court's decision not to suppress Lagar's inculpatory statement, we will not overturn the court's findings of historical facts unless they are contrary to the great weight and clear preponderance of the evidence. *See State v. Karow*, 154 Wis. 2d 375, 384, 453 N.W.2d 181, 185 (Ct. App. 1990). The ultimate issue, however—whether the police failed to scrupulously honor Lagar's right to counsel—is a question of constitutional fact which we answer independently. *Id.* at 385, 453 N.W.2d at 185.

Lagar contends that *Edwards v. Arizona*, 451 U.S. 477 (1981), is a bright-line rule that all interrogation must cease after a person clearly invokes the right to counsel. He asserts that Seils's follow-up question

430

about the name of his attorney was improper and his responses that established he wanted to talk with a non-lawyer do not make the request for an attorney ambiguous.

*Edwards* is a bright-line rule that once an accused expresses the desire to deal with the police only through an attorney, the accused "is not subject to further *interrogation* by the authorities until counsel has been made available to him . . .." *Id.* at 484-85 (emphasis added). *Edwards* did not confer a substantive constitutional right that did not exist before; it did nothing more than mark the protective umbrella enhancing a constitutional guarantee. *See United States v. Webb,* 755 F.2d 382, 387 n.9 (5th Cir. 1985).

We do not agree with Lagar that all further questioning of any type must cease upon an accused's clear invocation of the Fifth Amendment right to counsel. Rather, *Edwards* requires that only *interrogation*—questions designed to elicit incriminating answers—must cease.

> [T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis,* 446 U.S. 291, 301 (1980) (footnotes omitted).

Because *Edwards* is nothing more than a protective umbrella which enhances the constitutional rights explained in *Miranda*, we do not read *Edwards* as prohibiting questions "normally attendant to arrest

431

and custody." Nor do we read *Edwards* as prohibiting questions designed to accommodate a demand for counsel. If we were to read *Edwards* as narrowly as Lagar requests, the right to counsel would be a hollow right because once it was invoked by the accused the authorities could not ask any question, the answer to which would help fulfill the right to counsel. We conclude that once the accused clearly invokes the right to counsel, interrogation must cease; however, the police can ask simple questions with the goal of insuring that the accused is provided with counsel.

■

As applied to the facts of this case, once Lagar invoked his right to counsel Seils could ask him about his attorney. The goal of that question was to facilitate the right to counsel, not to elicit an incriminating statement. It was Lagar who volunteered that Perez was a police officer and not an attorney. This volunteered information muddied the waters. The officer's next question—whether Lagar wanted to speak to Perez or an attorney—was nothing more than an attempt to clarify Lagar's desire for counsel. *See State v. Walkowiak,* 183 Wis. 2d 478, 485, 515 N.W.2d 863, 867 (1994). Lagar's response that he wanted to speak to Perez resolved any question about whether he wanted to invoke his right to counsel, and the police officer did not have to cease questioning the defendant. *See id.* at 486, 490, 515 N.W.2d at 867, 869. We conclude that the trial court did not err in denying the motion to suppress Lagar's statements.

Lagar's second argument is that the trial court erred when it refused to give the *falsus in uno* instruction. During the instruction conference, Lagar argued that Seils's testimony was willfully false concerning the circumstances surrounding Lagar's request for

counsel and concerning fingerprint statistics. On appeal he also argues that the testimony of the three accomplices was willfully false. Although Lagar did not directly ask for the *falsus in uno* instruction for the three accomplices during the instruction conference and technically waived any objection he might have, § 805.13(3), STATS., we will address the merits of the issue.

We conclude that the court properly denied the instruction. A trial court has wide discretion with respect to jury instructions. *State v. Williamson*, 84 Wis. 2d 370, 393, 267 N.W.2d 337, 348 (1978). We will not find error if the instructions adequately cover the law applicable to the facts. *Id.*

The *falsus in uno* instruction is not favored.[1] *Id.* at 395, 267 N.W.2d at 349. "In order for the *falsus in uno* instruction to be appropriate, the false testimony must be on a material point and must be willful and intentional." *Id.* at 394, 267 N.W.2d at 348. We will first consider Seils's testimony at trial that after being given his *Miranda* rights, Lagar immediately asked to speak to Perez. Unquestionably, this testimony was in contradiction to her testimony one day earlier that Lagar responded to being "Mirandized" by asking to speak to an attorney and he only asked to speak to Perez after the officer asked the name of his attorney. Defense

---

[1] WISCONSIN J I—CRIMINAL 305 provides:

If you become satisfied beyond a reasonable doubt from the evidence in this case that any witness has, on this trial, wilfully testified falsely as to any material fact, you are at liberty, in your discretion, to disregard all the testimony of such witness except insofar as you find it corroborated by other evidence that is credible.

counsel reacted to this contradiction with an objection and subsequently impeached Seils with her previous cross-examination testimony. The impeachment of a witness with prior statements does not necessarily mean that a *falsus in uno* instruction is appropriate. The testimony must be shown to be willful and intentional. The trial court was in the best position to make this call. We see no error in the court's discretionary decision refusing the instruction.

Next, we consider Seils's testimony that in eighty-nine percent of cases, latent fingerprints will not be found at the scene of a crime and her admission that she just made up the figures based on her seven years of experience as an evidence technician. Lagar asserts that this testimony was a willful and intentional falsehood. We disagree. Within the context of Seils's testimony, the testimony concerning fingerprints is best classified as an opinion.

The genesis of her testimony was a question during cross-examination asking whether she ever had any bullets fingerprinted. When the assistant district attorney was conducting redirect examination, he asked the officer if any fingerprints were recovered at the crime scene and she answered no. The assistant district attorney then asked, "Do fingerprints work like they do on tv?" In her answer the officer used the figure that in eighty-nine percent of the cases fingerprints are not found. Then during recross, Seils admitted she made up the numbers but she also testified she based the numbers on her years of experience. In this context, it is clear that Seils was giving her opinion based on her experience.

Finally, we consider the contention that the testimony of the three accomplices justified the giving of a *falsus in uno* instruction. We agree with Lagar that the truthfulness of the testimony of Silva, Rivera and Ayala is in question. However, the trial court had the benefit of observing the actual testimony of all of the witnesses and could determine whether the instruction was appropriate. *State v. Robinson*, 145 Wis. 2d 273, 282, 426 N.W.2d 606, 611 (Ct. App. 1988). After assessing the testimony of Lagar's three accomplices, the trial court obviously concluded that the jury would be able to properly assess their credibility if given the general instruction on witness credibility, WIS J I—CRIMINAL 300, and on the testimony of accomplices, WIS J I—CRIMINAL 245. Because the jury was given these two instructions, which adequately state the law, and the credibility of the witnesses was extensively discussed during closing arguments, we conclude that there was no error in the trial court's refusal to give the *falsus in uno* instruction as to Silva, Rivera and Ayala.

*By the Court.*—Judgment affirmed.